**Glenn E. BOYDSTON, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. 35965.

Supreme Court of Oklahoma.

Nov. 23, 1954.

Odes Harwood, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hanson, First Asst. Atty. Gen., for defendant in error.

WELCH, Justice.

This is an appeal from a judgment rendered in the district court upon a trial de novo, wherein defendant had appealed from an order of the State Board of Embalmers and Funeral Directors suspending his license (as an Embalmer and Funeral Director) for a period of three years.

January 16, 1953, a complaint was filed against defendant in the name of the State Board charging him with gross malpractice within the meaning of 59 O.S.1951 § 396.12, and certain rules of the Board, in that defendant had solicited patronage by mail in

a particular instance. Hearing before the Board resulted in the entering of an order revoking and suspending defendant's licenses until January 1, 1956.

Defendant appealed to the district court where the matter was heard and determined on stipulated facts. Defendant at all times concerned was a licensed embalmer and funeral director doing business at Comanche, Oklahoma. The misconduct charged against him, styled "gross malpractice" was alleged to be demonstrated by certain correspondence passing between defendant and a resident of Missouri. The Missouri resident was the father of a son who had been convicted of a capital offense and sentenced to be executed in a distant state. Defendant wrote the Missouri resident, in substance, that he, the defendant, had been approached by a man who preferred to remain anonymous, but who was possessed of financial means, and had offered "in humanity's sake" to finance the return of the son's body from the distant state for proper burial. The father in Missouri replied, in substance, that he was a poor man and not able to return his son's body for burial, that no relatives resided in Oklahoma, but that he, the father, had a family lot in a cemetery in Missouri, and inquiring if the anonymous gentleman would be kind enough to have the body brought to Missouri. In that reply the father stated "if this gentleman honestly wants to help in the sake of humanity this family is very grateful." It was further stated, however, that if the body was desired for experiment or publicity the father would not consent to releasing the body to be brought only to Oklahoma. Thanks were expressed to the defendant, and inquiry was made for advice as to the attitude of the man who was contributing the money.

Defendant then wrote the father in Missouri that he had again talked with the contributor of the money, who years ago had a son who went astray and suffered a similar sad fate at a time when that man was without funds and unable to provide his own son a proper burial. Defendant further advised the father in Missouri that the anonymous contributor was not interested in the body for any publicity or experiment.

The father in Missouri replied expressing sincere appreciation to the man "who is making it possible for us to have him (referring to the son) laid to rest by his mother."

Thereafter the details as to transportation and time were agreed upon between defendant and the father in Missouri. Upon direction of the father the body of the executed son was released to defendant in the distant state and he transported it to and through Oklahoma on his way to Missouri, where the body was buried in the family lot of the father in Missouri.

It is not charged that the defendant performed any improper act of any kind with or in connection with the deceased body, nor is there anything to indicate that the father in Missouri, or any other relative had or made any complaint as to any action of defendant. It is not charged that any statement made by the defendant to the father in Missouri was untrue, nor that any statement made by the father to the defendant was untrue. It is merely charged that the conduct of the defendant as demonstrated solely by the correspondence amounted to "solicitation of patronage" which had been defined by the rules of the State Board as constituting "gross malpractice," which was a statutory ground for revocation of the license of an embalmer and funeral director.

The statute prescribes, and at the same time as we view it, limits the authority of the Board to act in reference to these licenses. The statute 59 O.S.1951 § 396.12 provides, in material part, as follows:

"The Board may refuse to issue or to renew, or after notice and hearing, may at any time revoke any license, any application or registration for any one or combination of the following causes, to-wit:

"(a) Conviction of a felony shown by certified copy or the record of the court of conviction;

"(b) Conviction of a misdemeanor involving gross moral turpitude;

"(c) Gross malpractice or gross incompetency, which shall be determined by the Board;

"(d) False or misleading advertising as a funeral director or embalmer;

"(e) Employment by the licensee of a person or persons to solicit funeral directing or embalming; provided, however, that this subsection shall have no application to the operation of burial associations;

"(f) Violation of any of the provisions of this Act;

"(g) Fraud or misrepresentation in obtaining a license;

"(h) Using any casket or part thereof which has previously been used as a receptacle for, or in connection with, the burial or other disposition of a dead human body;

"(i) Violation of any rule, or regulation of the Board in administering the purposes of this Act;

"(j) Use of intoxicating liquor sufficient to produce drunkenness in public, or habitual addiction to the use of habit-forming drugs, or either. Laws 1941, p. 238, § 13; Laws 1945, p. 193, § 5."

The State Board, among other rules, adopted its rule 24 providing as follows:

"After notice and hearing the Board may revoke, or refuse to issue or renew any license or registration on any of the statutory grounds. Gross malpractice is one of the statutory grounds for revocation of license and the Board does hereby adopt the following clarification and definition of the term 'gross malpractice.'

"The commitment of any of the following shall be considered malpractice:

"(a) Using, participating in, selling, promoting, servicing, or operating directly or indirectly any business association, burial certificate, or burial insurance certificate system or business which has not specifically been authorized by the laws of the State of Oklahoma.

"(b) Unethical advertising or solicitation of patronage.

"(c) Aiding or abetting in any violation of the laws of the State of Oklahoma, the rules and regulations of this Board or the rules and regulations of the health department of the State of Oklahoma."

When the Legislature in subsection (c) used the expression "gross malpractice" they used that term in its general sense with its usual and ordinary definition, and that does not include the solicitation of business.

All of the parties here apparently agree in the assumption that in subsection (b) of rule 24 the word "unethical" refers only to advertising and does not refer to solicitation of patronage. Apparently all take the view that any kind or character of "solicitation of patronage" is condemned whether it be ethical or unethical; thus the licensee here is not charged with any unethical conduct, or any unethical solicitation of business, but is merely charged with "solicitation of patronage." It is so stated in the face of the charge and the Board found the licensee guilty as charged, and the district court found the licensee guilty of "solicitation of patronage." It therefore seems clear that the Board seeks to prohibit any kind or character of solicitation of business and assumes the legal authority to do so. We do not believe the Board has that authority.

We think it apparent that the Board's rule 24 adds grounds for revocation of licenses to those grounds specifically set out in the above-quoted statute in their purported definition of the term "gross malpractice" to include "solicitation of patronage."

The effect of the Board's contentions here is to imply that a licensed embalmer or funeral director may not advertise or solicit business or patronage. But the statute in subsections (d) and (e) implies that the licensee, or the licensed embalmer may advertise or solicit patronage, thus subsection (d) prohibits only "false or misleading advertising", while subsection (e) prohibits or forbids only the *employment* by the licensee of a person or persons to solicit funeral directing or embalming. The statute does not expressly prohibit the licensed

142

embalmer from advertising or soliciting patronage, and by the proviso of subsection (e) burial associations may even *employ* persons to solicit funeral directing or embalming.

Different states approach this problem in different ways. In California the statute expressly authorizes the Board to suspend or revoke licenses or certificates for certain types of "solicitation", but expressly authorizes general advertising. California Statutes 1933, pages 766, 771. Of course general advertising in itself is a character of seeking or soliciting business or patronage.

We think it must be left to the Legislature to say what types of solicitation should be prohibited, or at least specifically authorize the Board to act in reference thereto.

When the Legislature specifically authorizes the Board to revoke a license for "gross malpractice" that expression should be taken in its general and ordinary sense and meaning unless the statute authorizes some separate or specific definition thereof by the Board.

In behalf of this licensee, and in reference to the legislative intent in using the expression "gross malpractice," it is pointed out that our Legislature in numerous instances used that expression. We observe that the Legislature used the term "gross malpractice" in reference to the practice of barbers, 59 O.S.1951 § 79, and in reference to cosmetologists, 59 O.S.1951 § 199.11, and used the expression "malpractice" in the Act regulating the practice of veterinarians, 59 O.S.1951 § 689, and used the term "gross malpractice" in this Act dealing with funeral directors and embalmers. It is urged that the Legislature nowhere intended that the expression "malpractice" should be used to include advertising or seeking business or soliciting patronage, and it seems to us that the term in question should be given its ordinary meaning which will well fit its use in these various acts.

When the statute prohibited "false or misleading advertising" it surely did not mean to forbid all advertising or it would have so stated.

It is contended by defendant that the correspondence above referred to did not amount to "solicitation of patronage" since the business or patronage had already been offered to him, subject to the father's consent, before he wrote the father in Missouri, but be that as it may, it is our view that the Board was limited to the causes provided by statute for revocation of licenses, and that it had no authority to adopt a rule broadening the term "gross malpractice" to include "solicitation of patronage."

It is a generally accepted rule, and we think a wholesome one, that Boards created by statute may only exercise the powers granted by statute. Such Boards are usually granted authority to make rules for their various procedures, but this does not include the authority to make rules which in effect extend their powers beyond those granted and fixed by statute.

It follows that the Board here was without authority to make a rule providing for suspension or revocation of license for mere "solicitation of patronage" and was without authority to suspend this license for mere solicitation of business or patronage, *if the acts of defendant amounted to that.*

The judgment appealed from is reversed, with directions to dismiss the charges against the defendant.

JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.

HALLEY, C. J., dissents.