MATADOR PIPELINES,
INC., Appellant,

v.

The OKLAHOMA WATER
RESOURCES BOARD,
Appellee.

No. 63960.

Supreme Court of Oklahoma.

July 14, 1987.
Rehearing Denied Sept. 16, 1987.

Crow & Dunlevy by Arlen E. Fielden, Oklahoma City, for appellant.

Dean A. Couch, Gen. Counsel, Oklahoma Water Resources Bd., Oklahoma City, for appellee.

HODGES, Justice.

Matador Pipelines, Inc. (appellant or Matador) owns and operates a crude oil pipeline approximately nine miles northwest of Fairview, Oklahoma. In May 1983, the pipeline sustained a leak causing crude oil to flow into an unnamed tributary of Barney Creek and into Barney Creek. The Oklahoma Water Resources Board (appellee or Board) was informed by a landowner on whose property the pipeline ran that oil was entering Barney Creek. The Board reported the matter to the Department of Pollution Control who then reported it to the Oklahoma Corporation Commission (Commission), Oklahoma Department of Wildlife Conservation and the United States Environmental Protection Agency

(EPA). The Board did not initiate an investigation as it concluded the Commission had primary jurisdiction since the spill involved crude oil.

After the Commission and the EPA investigated the incident, a cleanup operation was conducted by Matador. A joint follow-up investigation was made by the Commission and the Board. It was determined oil was still seeping from the ground around the spill site in the bottom sediments and on the surface of Barney Creek. During the investigation the Board investigator found numerous violations of the 1982 Oklahoma Water Quality Standards were present. The Commission representative told the Board investigator the spill had been adequately cleaned up according to Commission regulations. However, because Matador was purportedly still in violation of water quality standards the representative told the Board investigator the Board should enforce its standards. Consequently, the Board continued its investigation.

On August 10, 1983, a letter was sent to Matador from the Board notifying it that the crude oil was still present and needed to be cleaned up. The letter gave corrective actions which needed to be taken to prevent further pollution to Barney Creek and other water sources. The letter stated Matador could answer or object to the specified violations in an administrative hearing before the Board. Matador responded by letter to the Board objecting to the jurisdiction of the Board and asserting the spill was adequately cleaned up. Administrative violation hearings were held over Matador's continued objection to the Board's jurisdiction. Negotiations were had although no agreement was reached by the parties in determining the scope of the required cleanup.

Thereafter the Board's violation hearings were reopened. After these proceedings, the hearing examiner proposed findings of fact, conclusions of law and a Board order to be presented for the Board's consideration. On August 14, 1984, the Board adopted the examiner's proposal and an order was entered concluding the Board

had jurisdiction and the evidence presented showed Matador had violated 82 O.S.1981, § 926.4(A). This section makes it unlawful to cause pollution or cause to be placed any waste in a location where it is likely to cause pollution of any waters of the State. The order required Matador to continue cleanup measures.

Matador filed a petition for review of the Board's order pursuant to the Oklahoma Administrative Procedures Act, 75 O.S. 1981, § 318. The District Court of Major County ruled the Board had properly exercised its jurisdiction under the facts presented. However, the court remanded the case to the Board for a hearing *de novo* finding appellant did not receive a fair administrative hearing. Matador appeals that part of the order which finds that although the Commission has "primary jurisdiction" for prevention of pollution resulting from oil production activity, the Board has "secondary or concurrent jurisdiction" where the Commission relinquishes its jurisdiction and cooperates with the Board.

The question presented is whether the Board has concurrent jurisdiction in circumstances involving pollution of state waters resulting from a crude oil pipeline break, or does the Commission have exclusive jurisdiction. The district court found the jurisdiction of the Commission is not exclusive and the Board has "secondary or concurrent jurisdiction" with the Commission to enforce compliance with its water quality standards. We disagree with the district court and reverse for the reasons stated below.

■ Administrative agencies may only exercise powers granted by the legislature in the statutes. *Boydston v. State*, 277 P.2d 138, 142 (Okl.1954). This includes an agency's exercise of jurisdiction. Upon a review of the statutes applicable to the present controversy which confer the various powers and duties upon the Commission and the Board, we conclude the Board does not have jurisdiction and the Commission has exclusive jurisdiction under the particular facts in the present case.

Title 17 O.S.1981, § 52 (amended 1986) vests exclusive jurisdiction with the Com-

mission over certain oil and gas activities including the "construction and regulation of oil and gas pipelines."[1] This statute does not refer to the prevention of pollution, but the Commission's jurisdiction regarding the prevention of pollution of state waters is expressed in § 139 of the Oklahoma Oil and Gas Conservation Act.[2] In addition, § 1–2005 of the Oklahoma Controlled Industrial Waste Disposal Act includes similar language as expressed in § 139 concerning the powers delegated to the Commission for regulating certain oil related matters and making rules for the prevention of pollution.[3] Neither provision explicitly mentions the word "exclusive" in relation to the prevention of pollution. However, § 1–2005 states the Commission has exclusive jurisdiction in making and enforcing rules, regulations and orders governing the handling, hauling, storage and disposition of waste oil and other deleterious substances. The next paragraph states the Commission has the power to promulgate rules preventing pollution. We find the exclusivity of the Commission's jurisdiction implicit based upon our interpretation of these statutes.

Title 52 O.S.1981, § 142 requires the Board to assist and cooperate with the Commission in the performance of its duties under § 139 by (1) making investigations, (2) gathering evidence, (3) filing reports and complaints with the Commission concerning the pollution of water by deleterious substances referred to in 52 O.S.1981, § 139 and (4) making recommendations to the Commission. The statute does not mention or imply the Board has concurrent or secondary jurisdiction with the Commission.[4]

 The Board argues its jurisdiction is based on the purported violations by Matador of water quality standards set by the Board. In the Pollution Remedies Act, 82 O.S.1981, § 926.3(6), the Legislature confers upon the Board the power to set

**1.** 17 O.S.1981, § 52 (amended 1986) provided:
"All authority and duties now conferred upon the Corporation Commission or other departments of the state government in reference to the conservation of oil and gas and the drilling and operating oil and gas wells and the construction and regulation of oil and gas pipelines, are hereby conferred exclusively upon the Corporation Commission."

**2.** It is provided by 52 O.S.1981, § 139:
"The Corporation Commission of Oklahoma, referred to in this act as the 'Commission', is hereby vested with jurisdiction, power and authority, and it shall be its duty, to make and enforce such rules, regulations and orders governing and regulating the handling, storage and disposition of saltwater, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing, refining and processing of oil and gas within the State of Oklahoma or operation of oil or gas wells in this state as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the state, and to otherwise carry out the purpose of this act."

**3.** Title 63 O.S.Supp.1982, § 1–2005(A)(2) states in relevant part:
"The Corporation Commission of Oklahoma is hereby vested with exclusive jurisdiction, power and authority, and it shall be its duty to make and enforce such rules, regulations and orders governing and regulating the han-

dling, hauling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing and processing of oil and gas, including reclaiming of oil from tank bottoms located on leases and tank farms located outside the boundaries of a refinery.
The Corporation Commission shall promulgate such rules and regulations as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the state...."

**4.** 52 O.S.1981, § 142 provides:
"The Oklahoma Water Resources Board in pursuance of its duties with respect to the waters of the state and the Department of Wildlife Conservation of the State of Oklahoma in pursuance of its duties with respect to the game and aquatic life of the state are authorized and it shall be their duty to assist and cooperate with the Commission in the performance of its duties under this act by making investigations, gathering evidence and filing reports or complaints with the Commission concerning conditions with respect to the handling, storage and disposition of the deleterious substances referred to in Section 1 of this act and by making recommendations from time to time to the Commission with respect to rules, regulations, orders or other action that may be required to carry out the purpose of this act."

and enforce water quality standards.[5] Section 926.3(6) requires the Board to adopt, modify or repeal and promulgate standards of quality for the waters of the State. However, this statute expressly states the Board in performing its function of setting standards may not take into consideration impacts from activities related to acceptable petroleum operations and practices. Thus, the impacts resulting from the petroleum industry are exempt from water quality standards. The jurisdiction of the Board is limited by the plain language of Section 926.3(6). We conclude the Board has no jurisdiction to enforce purported violations of water quality standards resulting from pollution of state waters by crude oil involved in acceptable petroleum operations of Matador despite any statements from the Commission official to the Board investigator to proceed in enforcing such standards. A state official has no power to relinquish his agency's jurisdiction to another state agency in excess of the latter's actual authority. *Cf. General Motors v. Okl. Cty. Bd. of Equal.* 678 P.2d 233, 236 (Okl.1983), *Anderson v. Grand River Dam Authority,* 446 P.2d 814, 818 (Okl.1968). The Board possesses only the jurisdiction conferred upon it by statute. *Boydston, supra.* Because the Legislature conferred exclusive jurisdiction upon the Commission, the Board had no authority to assume jurisdiction in the present case.

In *Pollution Control Coordinating Board v. Okla. Corporation Commission,* 660 P.2d 1042 (Okl.1983), this Court held the Commission has exclusive jurisdiction over oil and gas matters and is charged with the prevention of polluting surface and subsurface waters. There, the Pollution Control Coordinating Board was attempting to assert jurisdiction over slush pit pollution. This Court stated the Commission has exclusive jurisdiction and the

PCCB may assume jurisdiction only in limited instances for prevention of pollution. This Court held § 139 and all prior analogous statutes are merely cumulative and predicated on the foundation laid in 17 O.S. 1981, § 52 reposing all authority concerning petroleum production in the Commission. This case is controlling and governs the disposition of the present controversy. Accordingly, we find the Corporation Commission has exclusive jurisdiction over pollution of state waters caused by a break in a crude oil pipeline.

Therefore, based upon our review of all of the various legislative statutes addressing the powers and duties of the Commission and the Board, and the decisions of this Court, we are compelled to find the Legislature did not grant concurrent jurisdiction to the Board over the pollution of state waters resulting from crude oil involved in petroleum operations. The task of conferring jurisdiction, and changing jurisdiction, is properly the function of the legislative branch of government.

Our disposition of this case does not in any way disturb the prescribed duties of the Board under 52 O.S.1981, § 142 to make investigations, gather evidence, file reports and complaints with the Commission concerning petroleum related water pollution and make recommendations to the Commission.

We therefore reverse that part of the district court's order which finds the Corporation Commission relinquished its "primary jurisdiction" to the Water Resources Board by making no objection to the Board's exercise of its "secondary or concurrent jurisdiction." Inasmuch as we have determined the Board may not properly exercise any jurisdiction, we remand this matter to the Board with directions that the proceeding be dismissed.

5. 82 O.S.1981, § 926.3(6) provides:
"The Oklahoma Water Resources Board shall have and is hereby authorized to exercise the following powers and duties:

6. To adopt, modify or repeal and promulgate standards of quality of the waters of the state, giving due consideration to the impact of factors affecting sediment where necessary and incidental to such water quality standards, excepting such impacts as may result from activities related to acceptable forestry, agricultural, and petroleum operations and practice, and to classify such waters according to their best uses in the interest of the public under such conditions as the Board may prescribe for the prevention, control and abatement of pollution."

HARGRAVE, V.C.J., and LAVENDER, OPALA and ALMA WILSON, JJ., concur.

KAUGER, J., concurs by reason of stare decisis.

DOOLIN, C.J., and SUMMERS, J., dissent.

SIMMS, J., disqualified.

SUMMERS, Justice, dissenting.

I would affirm the trial court for the following reasons:

### I.

The majority acknowledges that the statutes do not expressly vest exclusive jurisdiction over matters involving pollution in the Corporation Commission. I am not compelled to concur in its conclusion that such a construction is "implicit". For example, 17 O.S.1981, § 52 provides that

"All authority and duties now conferred upon the Corporation Commission ... in reference to the conservation of oil and gas and the drilling and operation of oil and gas wells and the construction and regulation of oil and gas pipelines are hereby conferred exclusively upon the Corporation Commission".

The Board points out that this is not a controversy relating to the "construction and regulation" of an oil pipeline; it is one relating to the pollution being caused from an inadequate clean-up of a pipeline break.

For another example, the section cited from the Oklahoma Controlled Industrial Waste Disposal Act[1] vests exclusive jurisdiction with the Commission for certain purposes, but in the paragraph providing that the Commission adopt rules and regulations for the prevention of water pollution, the word "exclusive" does not appear.

Nor do I concur that the Board is excluded from enforcing water quality standards where such are impacted by oil or gas operations such as this under 82 O.S.1981, § 926.3(6). That section excepts impacts upon water quality "as may result from activities related to *acceptable* ... petrole-

um operations and practice" (emphasis mine). I doubt it is acceptable practice to leave the stream your line has polluted in an unlawful condition for somebody else to clean up.

### II.

The majority holds *Pollution Control Coordinating Board v. Okla. Corp. Commission*, 660 P.2d 1042 (Okl.1983) to be controlling. Yet that opinion noted that under the water pollution statute (82 O.S. 1971, § 934) the Pollution Control Coordinating Board may proceed (despite "exclusive" jurisdiction in the Corporation Commission) if

"(2) it finds that the agency having primary jurisdiction has, failed, refused, or neglected to take action; or

(3) the agency having primary jurisdiction requests the Pollution Control Coordinating Board to take action." Supra, P. 1044.

The court found that neither of the above conditions were present in that case. But what of today's case?

It is significant that this is not an inter-agency struggle for jurisdictional territory. The Corporation Commission is not even a party here. The Board reported the spill to the Department of Pollution Control who then reported it to the Corporation Commission. The Board correctly concluded that the Commission had primary jurisdiction since the spill involved crude oil. The Commission investigation resulted in the leak being stopped and in a purported cleanup operation by Matador. But although the spill was "cleaned up" by Commission standards there were still violations of the 1982 Oklahoma Water Quality Standards present. The testimony was that the Board was told by the Commission's representative that since Matador was still in violation of the water quality standards, *those standards should be enforced by the Board.* Hence the Board's investigation continued, resulting in the proceedings which are now before the court.

---

1. 63 O.S.Supp.1982, § 1–2005(A)(2).

I suggest that condition number (3) of *Pollution Control Coordinating Board v. Okla. Corp. Commission,* supra, (the agency having primary jurisdiction requesting the Board to take action) has occurred here, that the agencies are attempting to work together within the spirit of the water pollution laws (see III infra) and that the proceedings to this point are consistent with the statutes.

### III.

Several statutory provisions reflect legislative intent that both the Commission and the Board should operate with each other in fulfilling their statutory duties. Among these is the provision in the Pollution Remedies Act, 82 O.S.1981, § 926.3(2), which directs the Board:

"2. To advise, consult and cooperate with other agencies of this state, the federal government, other states and interstate agencies and with affected groups, political subdivisions and industries in furtherance of the purposes of this act ..."

Additionally, 82 O.S.1981, § 1085.15 provides:

"All state institutions, agencies, departments, boards and officers are hereby authorized and directed to cooperate with the Oklahoma Water Resources Board in all matters relating to its duties."

Furthermore, this statutory mandate is recognized by the Corporation Commission and is reflected in its General Rules and Regulations of Oil and Gas Conservation Division, Rule 3–103(a), which provides:

"3-103. *Cooperation With Other Agencies.*

(a) These rules and regulations shall not be construed and modifying the rights, obligation duties of any person under any law of this state, or any order, rule or regulation of the *Oklahoma Water Resources Board,* State Department of Health, Oklahoma Wildlife Conservation Commission, State Board of Agriculture, Department of Pollution Control, or any other agency of this state with re-

spect to pollution of fresh water." (emphasis added)

The relationship between the Corporation Commission and the Board is described with particularity in 52 O.S.1981, § 142. This statute includes a list of additional activities the Board will perform by providing that:

"The Oklahoma Water Resources Board in pursuance of its duties with respect to the waters of the state and the Department of Wildlife Conservation of the State of Oklahoma in pursuance of its duties with respect to the game and aquatic life of the state are authorized and it shall be their duty to assist and cooperate with the Commission in the performance of its duties under this act by making investigations, gathering evidence and filing reports or complaints with the Commission concerning conditions with respect to the handling, storage and disposition of the deleterious substances referred to in Section 1 of this act and by making recommendations from time to time to the Commission with respect to rules, regulations, orders or other action that may be required to carry out the purpose of this act."

The above statute is a legislative mandate stating that the Oklahoma Corporation Commission and the Board must work together with the common interest of preventing pollution to the waters of the State of Oklahoma. It is clear in reading all the above statutes together that it was anticipated by the Legislature that it would be necessary for the Corporation Commission to call upon the expertise of other state agencies from time to time in dealing with certain instances of pollution.

When the representative from the Commission confirmed to the representative of the Board that since "it was water quality standards that were being violated, that the Board should go ahead and enforce that", and that the "cleanup was not their bailiwick", the two agencies were cooperating as mandated by the statutes. They were also acting consistently with the public policy of Oklahoma as stated in 82 O.S. 1981, § 926.2, which is:

"... to conserve the waters of the state and to protect, maintain and improve the quality thereof for public water supplies, for the propagation of wildlife, fish and aquatic life and for domestic, agricultural, industrial, recreational and other legitimate beneficial uses; to provide that no waste be discharged into any waters of the state without first being given the degree of treatment necessary to protect the legitimate beneficial uses of such waters; to provide for the prevention, abatement and control of new or existing water pollution; *and to cooperate with other agencies of this state, agencies of other states and the federal government in carrying out these objectives.*" (emphasis added)

If (1) a stream has been polluted by crude oil, and (2) a cleanup is attempted under the direction of the Corporation Commission, and (3) that operation, when completed, still leaves the water, the stream banks, and the stream bottom in a condition inferior to that required by the Oklahoma Water Quality Standards, then who is it that will then enforce the proper cleanup? No one, we say today. I find this result incompatible with the spirit and letter of the legislature's efforts to keep our waters clean.

I am authorized to state that DOOLIN, C.J., joins in the views expressed herein.