Dear Mr. Fite:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Oklahoma Scenic Rivers Commission ("OSRC") have the authority to ban or restrict the possession and/or consumption of alcohol and non-intoxicating beverages which contain 3.2% alcohol or less, such as low-point beer, (i) on the river/streams and/or (ii) in the public access areas which are under the OSRC's jurisdiction?
 2. Does the OSRC have authority to restrict (rather than ban) the possession and/or consumption of alcohol and non-intoxicating beverages which contain 3.2% alcohol or less on (i) certain days or (ii) certain stretches of the river/streams within the OSRC's jurisdiction?
 3. Does the OSRC have authority to restrict the quantity of alcohol and non-intoxicating beverages which contain 3.2% alcohol or less possessed (i) on the river/streams and/or (ii) in public access areas which are under the OSRC's jurisdiction?
 BACKGROUND
You indicate that the Oklahoma Scenic Rivers Commission ("OSRC"), a state agency,[1] is considering whether to promulgate administrative rules to regulate the possession and consumption of alcohol and "non-intoxicating beverages which contain 3.2% alcohol or less" in areas within its jurisdiction.[2] These areas are designated as "scenic river areas" and include portions of certain rivers and creeks in Adair, Cherokee and Delaware counties. 82 O.S. Supp. 2005, § 1452[82-1452](B). The OSRC also owns and operates public access points adjacent to the rivers and streams in these areas. Id. § 1452(C). You have indicated that many of the problems plaguing the scenic river areas, such as litter, rowdiness, disturbance of other scenic river area users, vandalism, and safety hazards on the scenic rivers, streams, and area roads, stem from the use of alcohol and low-point beer, and ask whether the OSRC has the requisite authority to regulate the possession and consumption of these beverages within its jurisdiction.
We begin the analysis with the rule that state agencies "may only exercise the powers granted by statute. . . . [T]his does not include the authority to make rules which in effect extend their powers beyond those granted and fixed by statute." Okla.Alcoholic Beverage Control Bd. v. Moss, 509 P.2d 666, 668 (Okla. 1973) (quoting Boydston v. State, 277 P.2d 138, 142 (Okla. 1954)). Besides powers expressly granted by statute, state agencies also possess "such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon, 618 P.2d 401, 405 (Okla. 1980). We must therefore examine the OSRC's express and implied powers to determine whether it has the authority to promulgate rules regulating the possession and consumption of alcohol and low-point beer within its jurisdiction.
 PURPOSE AND POWERS OF SCENIC RIVERS COMMISSIONS
The OSRC's enabling legislation is the Scenic Rivers Act, 82 O.S. 2001 Supp. 2005, §§ 1451-1471. According to the Scenic Rivers Act, the OSRC exists to help preserve "for the benefit of the people of Oklahoma" certain free-flowing rivers and streams that possess "unique natural scenic beauty, water conservation, fish, wildlife and outdoor recreational values" in their natural scenic state. 82 O.S. 2001 Supp. 2005, §§ 1452(A), 1454(B). To "assist in the public use and enjoyment of such areas," the OSRC "may acquire, develop and maintain public access points, easements or park areas in or near `scenic river areas'." 82 O.S. 2001, § 1454[82-1454](C); see also 82 O.S. Supp. 2005, § 1461[82-1461](I) (10) (granting the OSRC authority to "[o]wn and control public access points to the scenic river area, issue use permits, and purchase easements and fee title to land" within its operating area). The OSRC may also "[p]repare and adopt a management plan or plans to guide and control private activities and public programs" to protect the special attributes of the areas within its control.Id. § 1461(I)(5).
The Legislature expressly granted to the OSRC authority to promulgate rules "respecting public services, land use, occupancy, structures, lot and plot sizes, density of population and other activities" as required to properly protect the "aesthetic, scenic, historic, archeologic and scientific features" of the scenic river areas, as well as rules it deems "necessary for the protection of the ecosystem and the environment from pollution, despoliation and destruction or waste of natural resources and all other factors adversely affecting the public health, safety and the general welfare." 82 O.S. 2001, § 1460[82-1460]; see also 82 O.S. Supp. 2005, § 1461[82-1461](G)(1)(b) (giving the OSRC power to "promulgate such rules and issue such orders as necessary to protect the public interest and to achieve the purposes of the Scenic Rivers Act").
We found no express grant of authority in the Scenic Rivers Act for the OSRC to promulgate rules to regulate the possession and consumption of alcohol and low-point beer within its jurisdiction. If such power exists, it must be either "necessary for the due and efficient exercise of the powers expressly granted" or "fairly implied" from the OSRC's express powers.Cannon, 618 P.2d at 405. In a previous Attorney General Opinion we considered a related issue — whether the OSRC had the power to regulate recreational activities and safety hazards within its jurisdiction in the absence of express statutory authority to do so. A.G. Opin. 01-1. That Opinion determined that the OSRC's authority to regulate recreational activities and safety hazards to protect public health and safety was limited to regulating such activities and hazards only as necessary to accomplish the purposes of the Scenic Rivers Act. Id. at 3.
The same reasoning applies to the OSRC's proposed regulation of alcohol and low-point beer; any rules must be necessary to accomplish the purpose of the Scenic Rivers Act — preserving the scenic rivers areas' "aesthetic, scenic, historic, archaeologic and scientific" features and protecting them from "pollution, despoliation and destruction or waste of natural resources and all other factors adversely affecting the public health, safety and the general welfare." 82 O.S. 2001, § 1460[82-1460]. To that end, the Legislature has given the OSRC authority to "do all things, whether expressly enumerated in the Scenic Rivers Act or not, which may be lawful and necessary and proper for the accomplishment of the purposes of the Scenic Rivers Act." 82 O.S. Supp. 2005, § 1461[82-1461](H).
In considering what things are "necessary and proper" for accomplishing the purposes of the Scenic Rivers Act, we can examine how state agencies with similar purposes have exercised their implied powers. Like the OSRC, other state agencies are charged with preserving and protecting public lands while making them available for recreation. Two such agencies are the Department of Wildlife Conservation ("Wildlife Department") and the Tourism and Recreation Department ("Tourism Department"). Neither of these agencies has express authority to regulate the possession and consumption of alcohol and low-point beer in areas under their jurisdiction, yet both have promulgated rules to do so.
For example, the Wildlife Department specifically has broad power to "manage and control, under the supervision of the Commission, all wildlife refuges and real or personal properties which are held, operated or maintained by the Department" but no mention is made of regulating alcohol and low-point beer on such lands. 29 O.S. 2001, § 3-105[29-3-105](A)(1). It is reasonable, however, to infer that for a state agency to "manage and control" property it holds, operates, or maintains, it has the power, either necessary or implied, to supervise the activities that occur thereon. The Wildlife Department has promulgated a rule stating in pertinent part:
 (a) No person shall use threatening, abusive or indecent language, participate in a disorderly assemblage, nor publicly appear nude or intoxicated on any lands owned or managed by the Oklahoma Department of Wildlife Conservation.
 (b) No person shall possess, consume or use any intoxicating beverage [as defined in Title 37, Section 163.1 of the Oklahoma Statutes] except at camping and parking areas . . . on any lands or waterways subject to the control of the Oklahoma Department of Wildlife Conservation. . . .
OAC 800:30-1-8 (1994).
Similarly, the Tourism Department's statutes give it authority to "[c]onserve, preserve, plan, supervise, construct, enlarge, reduce, improve, maintain, equip and operate parkland and public recreation facilities." 74 O.S. Supp. 2005, § 2215[74-2215](1). Using language similar to that giving the OSRC the authority to protect the "aesthetic, scenic, historic, archeologic and scientific features" of the scenic river areas "for the benefit of the people of Oklahoma," (82 O.S. 2001 Supp. 2005, §§ 1460, 1452(A)), the Legislature granted the Tourism Department the power to "[s]upervise the management and use of state properties and facilities under the jurisdiction of the Commission, with an emphasis on conserving, protecting, and enhancing the natural, ecological, historic, cultural, and other resources contained in each park and to provide for the public enjoyment of and access to these resources in a manner which will protect them for future generations[.]" 74 O.S. Supp. 2005, § 2215[74-2215](2). The Tourism Department's statutes contemplate that rules will be promulgated to accomplish these purposes, and empower the agency to then "[e]nforce the rules and policies governing the use of and conduct of patrons in all recreational facilities and properties of the Commission." Id. § 2215(5).
No statute gives the Tourism Department express authority to prohibit or otherwise regulate the possession and consumption of alcohol and low-point beer within a state park. As in the case of the Wildlife Department, however, it is reasonable to infer that for the Tourism Department to "[s]upervise the management and use of state properties and facilities under the jurisdiction of the Commission" it must have the necessary or implied power to regulate public use of the state parks. Id. § 2215(2). The Tourism Department has promulgated a rule stating in pertinent part:
 (a) The use or consumption of alcoholic beverages with less than or equal to three and two-tenths (3.2%) alcohol by weight within park areas is allowed in accordance with the provision of this section.
 (b) The following are prohibited:
 (1) The consumption of alcoholic beverages within park areas when such alcoholic beverage is in excess of three and two-tenths percent (3.2%) alcohol by weight and mixed beverage coolers except with an approved state license.
 (2) The possession and consumption of a non-alcoholic or alcoholic beverage, as defined in subsections (a) and (b)(1) of this section, by a person under 21 years of age.
 . . . .
 (5) Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person or damage property or natural resources.
 (c) The park manager may close all or portions of a public use area or facility to the consumption of beverages containing alcohol when:
 (1) The consumption of such beverages or the possession of an open container of such beverages would be inappropriate considering other uses of the location and the purpose for which it is maintained or established; or
 (2) Incidents of aberrant behavior related to the consumption of such beverages are of such magnitude that the diligent application of enforcement, over a reasonable period of time, does not alleviate the problem.
OAC 725:30-4-18 (1993).
Administrative rules such as those promulgated by the Wildlife and Tourism Departments are presumed to be valid unless declared otherwise by a court. 75 O.S. 2001, § 306[75-306](C). Both houses of the Legislature and the Governor must approve new rules and amendments to existing rules. Id. § 303.1(A). The agency rules cited above were approved and have been in effect for more than 10 years without being held invalid, and are therefore presumably within the agencies' authority despite the lack of an express statutory delegation of the power to regulate the possession and consumption of alcohol and low-point beer within their operating areas.
Like the Wildlife Department's authority to "manage," "control," and "supervis[e]" its lands, and the Tourism Department's mandate to "[c]onserve, preserve," and "protect" its properties and facilities, the OSRC is charged with "preserv[ing]" and "protect[ing]" the scenic rivers' "aesthetic, scenic, historic, archaeologic and scientific" features and "protect[ing] . . . the environment from pollution." 29 O.S. 2001, § 3-105[29-3-105](A)(1); 74 O.S. Supp. 2005, § 2215[74-2215](1), (2); 82 O.S. 2001 Supp. 2005, §§ 1460, 1452(A). Given the Legislature's broad grant of power to the OSRC to "do all things, whether expressly enumerated in the Scenic Rivers Act or not, which may be lawful and necessary and proper for the accomplishment of the purposes of the Scenic Rivers Act[,]" the question is whether it is "necessary and proper" for the OSRC to regulate the possession and consumption of alcohol and low-point beer to ensure that the "aesthetic, scenic, historic, archaeologic and scientific features" of the scenic rivers areas are protected "from pollution, despoliation and destruction or waste of natural resources and all other factors adversely affecting the public health, safety and the general welfare." 82 O.S. 2001 Supp. 2005, §§ 1460, 1461(H).
We believe it is reasonable to infer that the OSRC has authority to regulate the conduct of members of the public whose actions may interfere with accomplishing the purposes of the Scenic Rivers Act. Whether regulating the possession and consumption of alcohol and low-point beer will assist the OSRC in achieving its purposes will require factual determinations by the OSRC. We turn to how the OSRC can accomplish the purposes of the Scenic Rivers Act relating to public use of the areas in its jurisdiction.
 THE OSRC'S AUTHORITY TO REGULATE WITHIN ITS JURISDICTION
The OSRC's express powers to enforce the Scenic Rivers Act fall into three categories: (1) to employ peace officers (82 O.S. Supp. 2005, § 1461[82-1461](L)); (2) to declare public nuisances (id. § 1461(I)(9)); and (3) to control activities on property it owns by any means consistent with the rights inherent in such ownership (id. § 1461(I)(10)). We will briefly examine the OSRC's authority to use these means to fulfill the purposes of the Scenic Rivers Act to see if they are sufficient to regulate the possession and consumption of alcohol and low-point beer without the need for additional rules.
There is no question that the Legislature intended for the OSRC to supervise the public's use of the scenic rivers areas. In 2001, the Legislature added a new subsection to Title 82, Section 1461 of the Scenic Rivers Act allowing the OSRC's administrator to appoint commissioned peace officers to "secure" the scenic rivers areas. See 2001 Okla. Sess. Laws ch. 355, § 19(L)(1) (amending 82 O.S. Supp. 1997, § 1461[82-1461]). To "secure" means "to relieve from exposure to danger: make safe: GUARD." Webster's New International Dictionary 2053 (3d ed. 1993). The OSRC's peace officers have "the full powers and authority of peace officers of the State of Oklahoma in securing such scenic river area[s], including all roadways and adjacent areas to the Illinois River and Flint Creek within Adair, Cherokee and Delaware Counties, and those portions of the Barren Fork Creek within Cherokee County." 82 O.S. Supp. 2005, § 1461[82-1461](L)(1).
As was noted in A.G. Opinion 01-1, the OSRC has the power to enforce certain bodies of existing law. Id. at 4. For example, the Legislature gave the OSRC authority to "[i]dentify public and private nuisances which are adverse to the purposes of the Scenic Rivers Act and take such action as permitted by law to remove the public nuisances[.]" 82 O.S. Supp. 2005, § 1461[82-1461](I)(9). The OSRC has already promulgated rules regarding nuisances which state, in pertinent part:
 The following violations are identified as nuisances within the Scenic Rivers Area and shall be enforced as provided for by law:
 . . . .
 (2) Drinking and drugs
 (A) Drinking in a public place (M) [misdemeanor] 37 O.S. 8
 (B) Drunk in a public place (M) 37 O.S. 8
 (C) Under the influence of intoxicating substance (M) 37 O.S. 8
 (D) Drinking intoxicating liquor in public (M) 37 O.S. [537]
 (E) Permitting a person to be intoxicated in a place of business (M) 37 O.S. 537
 (F) Knowingly sell or furnish or give alcoholic beverage to a person under 21 years of age Felony (F) 37 O.S. 538
 (G) Transporting open container of nonintoxicating beverage (beer) (M) 21 O.S. 1220. . . .
OAC 630:20-1-2 (1991).
These provisions cite to existing statutes governing the possession and consumption of alcohol and low-point beer and declare certain conduct to be nuisances. The Oklahoma Statutes define nuisances as follows:
 A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
 First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
 Second. Offends decency; or
 Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or
 Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities.
50 O.S. 2001, § 1[50-1]. A "public nuisance" "affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." Id. § 2. The OSRC may "take such action as permitted by law to remove [such] public nuisances[.]" 82 O.S. Supp. 2005, § 1461[82-1461](I)(9). As was noted in Attorney General Opinion 01-1, at 4-5, these actions are: (1) requesting an indictment or information; (2) maintaining a civil action; and (3) abatement. See 50 O.S. 2001, §§ 9-11[50-9-11].
Attorney General Opinion 01-1 also noted that the OSRC has the authority to regulate the public's conduct on property it owns.Id. at 5. The OSRC "may acquire, develop and maintain public access points, easements or park areas in or near `scenic river areas'" as well as "[o]wn and control public access points to the scenic river area, issue use permits, and purchase easements and fee title to land" within its operating area. 82 O.S. 2001 
Supp. 2005, §§ 1454(C), 1461(I)(10). The OSRC has the same authority to regulate use of these public access points and park areas as does any other governmental property owner. A.G. Opin. 01-1, at 5.
Your questions indicate the OSRC wants to do more than merely declare some conduct, such as public drunkenness, a nuisance; it has already done this by rule, pursuant to express statutory authority. OAC 630:20-1-2(2)(B); 82 O.S. Supp. 2005, § 1461[82-1461](I)(9). Also by express statutory authority, the OSRC's peace officers can already enforce existing laws governing alcohol and low-point beer consumption, such as those prohibiting under-age drinking, as needed to secure the scenic rivers areas. Id. § 1461(L)(1). Rather, the OSRC wants to know if it may preempt such conduct and attempt to prevent it from occurring. You ask if the OSRC can, within its jurisdiction, promulgate rules to: (1) ban possession and/or consumption of alcohol and low-point beer, (2) restrict possession and/or consumption of alcohol and low-point beer to certain days and/or on certain stretches of the rivers and streams, or (3) limit the quantity of alcohol and low-point beer possessed (and hence consumed). Assuming that the OSRC has necessary or implied authority to regulate the possession and consumption of alcohol and low-point beer within its jurisdiction, the answers will depend upon whether these proposed alternatives are reasonable exercises of the police power.
 EXERCISE OF THE POLICE POWER BY STATE AGENCIES
Any rules the OSRC promulgates to regulate the conduct of persons within its jurisdiction implicate the police power of the state. The Oklahoma Supreme Court has discussed the nature of the police power as follows:
 The "police power" is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government; it embraces the whole system of internal regulation by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights of others.
 The Legislature has inherent power to prevent all things hurtful to the comfort and welfare of society, and under the police power has the right in proper cases to regulate the use of all property within the jurisdiction of the state, so as to secure the general safety, the public welfare, and the peace and good order and morals of the community, and the action of the Legislature in delegating part of its police power to subordinate state agencies . . . is not subject to constitutional objections.
Gibbons v. Mo., Kan. Tex. R.R. Co., 285 P. 1040 (syllabus) (Okla. 1930).
The court in Gibbons described a test for determining the extent to which the police power may be exercised by a state agency.
 It is well settled that the state, or its agents, in the exercise of [the] police power, can extend this power only to such measures as are reasonable under all circumstances. The means adopted must bear some real or substantial relation [to,] or be reasonably necessary for the accomplishment of[,] a legitimate object falling within the scope of the police power, and the law or regulation must tend toward the preservation of public welfare, health, safety, or morals.
Id. at 1043. Thus, should the OSRC determine that problems such as under-age drinking, litter, rowdiness, disturbance of other scenic river area users, safety hazards on scenic rivers, streams, and area roads, and vandalism thwart the purposes of the Scenic Rivers Act and require regulation of the possession and consumption of alcohol and low-point beer within its jurisdiction, it may promulgate rules reasonably related to addressing those problems.
It is, therefore, the official Opinion of the Attorney Generalthat:
 Under the implied powers of the Scenic Rivers Act, 82 O.S. 2001 Supp. 2005, §§ 1451-1471, the Oklahoma Scenic Rivers Commission ("OSRC") has the authority to:
 (1) ban or restrict the possession and/or consumption of alcohol and low-point beer both on the river/streams and in the public access areas under its jurisdiction,
 (2) restrict (rather than ban) the possession and/or consumption of alcohol and low-point beer on certain days and/or on certain stretches of the river/streams within its jurisdiction, and
 (3) restrict the quantity of alcohol or low-point beer possessed both on the river/streams and in the public access areas under its jurisdiction,
 as long as:
 a) it properly promulgates administrative rules under the Administrative Procedures Act, 75 O.S. 2001 Supp. 2005, §§ 250-308.2, and the Legislature and Governor approve those rules; and
 b) the rules it promulgates bear some real or substantial relation to, or are reasonably necessary to accomplish, the purposes of the Scenic Rivers Act. Gibbons v. Mo., Kan. Tex. R.R. Co., 285 P. 1040, 1043 (Okla. 1930).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
[1] "Each [Scenic Rivers] Commission shall be an agency of the state." 82 O.S. Supp. 2005, § 1461[82-1461](A)(2).
[2] Under Oklahoma law, "non-intoxicating beverages which contain 3.2% alcohol or less" are defined as "low-point beer." 37 O.S. 2001, § 163.2[37-163.2](1). This Opinion will use that term.