STATE for Use of BOARD OF COUNTY COM'RS OF CREEK COUNTY ex rel. JENNINGS et al. v. STRANGE et al.

No. 31351. May 3, 1949.

Rehearing Denied June 28, 1949.

Second Petition for Rehearing Denied Sept. 20, 1949.

*209 P. 2d 691.*

Mastin Geschwind, of Oklahoma City, and George H. Jennings, of Sapulpa, for plaintiffs in error.

J. Berry King and George J. Fagin, both of Oklahoma City, Johnson & Jones, of Bristow, and Ralph K. Robertson, of Sapulpa, for defendants in error, Willis C. Strange, J. D. Vineyard, H. H. Dailey, George R. Willibey, and C. Edgar Honnold.

Speakman & Speakman, of Sapulpa, for defendant in error Willis C. Strange.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and George B. Coryell, Co. Atty., Creek County, of Sapulpa, for defendants in error Board of County Commissioners of Creek County, Oklahoma.

M. C. Rodolf, of Tulsa, and Looney, Watts, Ross, Looney & Smith, of Oklahoma City, for defendant in error, Western Casualty & Surety Company.

Miley, Hoffman, Williams, France & Johnson and France, Johnson, Gordon & Cook, all of Oklahoma City, for defendant in error Standard Surety & Casualty Company of New York.

Ames, Monnet, Hayes & Brown, of Oklahoma City, for defendant in error Maryland Casualty Company.

Wilbur J. Holleman, of Tulsa, for defendant in error United States Fidelity & Guaranty Company.

LUTTRELL, J. This action was instituted on January 29, 1940, by the State of Oklahoma for the use of the board of county commissioners of Creek county and certain taxpayers of Creek county, against the defendants Willis C. Strange, a former county treasurer of Creek county and the members of a former board of county commissioners of Creek county, and the sureties on their official bonds, C. Edgar Honnold, and the board of county commissioners of Creek county, seeking to recover from the defendants and from the sureties on the official bonds of the former treasurer and former county commissioners, for the alleged conversion on March 9, 1937, of sinking fund bonds of Creek county of the face value of $290,000. The cause was tried to the court without the intervention of

a jury, and the judgment of the court was for defendants. Plaintiffs appeal.

Facts essential to the consideration of the questions presented are as follows: On March 8, 1937, Strange, the then county treasurer of Creek county, had in his possession township bonds issued by various townships of Creek county in which the sinking fund of Creek county had been invested, the bonds so held representing or being parts of eight different bond issues, which bonds, figured at their par value with accrued interest, were of the value of $293,819.12. On said date Strange presented to the then board of county commissioners a resolution, which was adopted by them, authorizing him to sell and dispose of said bonds. Said resolution provided that the sale of said bonds at not less than par and accrued interest was for the best interests of Creek county, and authorized him to sell said bonds at not less than par and accrued interest as required by law. On March 9, 1937, Strange, in company with the deputy county treasurer, took the bonds to the offices of C. Edgar Honnold, a dealer in bonds in Oklahoma City, and there disposed of them in one transaction for the total sum of $296,269.12, which sum Strange thereafter deposited to the credit of the sinking fund of Creek county.

Both Strange and the former county commissioners testified that before the resolution authorizing Strange to sell the bonds was adopted by the county commissioners, he had fully advised them of the terms of the sale. But it is noteworthy that the resolution itself does not state the name of the purchaser nor the amount to be paid for the bonds, and that Honnold, the purchaser, and his agent who had been in contact with Strange with reference to the purchase of the bonds by Honnold, both testified that the exact amount to be paid for the bonds was not definitely determined until the deal was made in Honnold's office on March 9th.

The record of the county commissioners' proceedings on March 8, 1937,

with reference to this transaction, as duly recorded by the county clerk, is as follows:

"Sapulpa, Oklahoma, March 8, 1937. A resolution introduced by the County Treasurer requesting authority to sell certain bonds in the aggregate of $290,-000 now held by him as Sinking Fund investments, at not less than par and accrued interest, as required by law, was passed and approved." Signed: "H. H. Dailey, Chairman, Huber Hughes, County Clerk."

Honnold further testified, and his testimony is undisputed, that he paid less than par value for bonds issued by Mounds Township aggregating some $160,000, and bonds of Euchee Township aggregating some $32,000, but that by including all the bonds in one deal and paying a premium on other issues, and applying a part of that premium to the purchase price of the Mounds and Euchee Township bonds, Creek county received par value and accrued interest for those bonds. The record further shows that on March 13th, Honnold disposed of a portion of the bonds of the par value of $205,000 at a substantial profit, the bonds so disposed of including a portion of the Mounds Township bonds for which he had paid less than par value. He sold all the bonds at a profit, the last sale being made on June 2, 1937. His total profit for the sales made on March 13th was $18,-551.85, and his profit from the sale of all the bonds amounted to $23,479.75.

It further appears from the evidence that prior to March 8th Strange had been approached by several bond purchasers desiring to purchase all or a portion of these bonds, and that he had consistently advised them that the bonds were not for sale. One of these bond buyers, Edwards, testified that each of the township bond issues involved was worth a premium over and above par and accrued interest, and that a fair price for all issues, after allowing the purchaser a reasonable percentage of profit in disposing of them, would have amounted to $13,310 more than the amount paid by Hon-

nold. The premium paid by Honnold, over and above the par value of the bonds plus accrued interest, amounted to $2,450.

The first contention made by plaintiffs is that no valid contract for the sale and delivery of the bonds involved was made by the board of county commissioners with defendant Honnold as required by the law then in force. We consider this the decisive question presented.

The governing statute then in force was section 2, ch. 207, S.L. 1919, p. 294. That section reads as follows:

"Section 2. The Governor of the State of Oklahoma, the mayor and common council or the city commissioners of any city, the board of county commissioners of any county, the board of trustees of any township, town, school district, or the board of education of any city or other school district within the State of Oklahoma, when deemed by them to be to the best interest, is hereby authorized and empowered to sell any or all of the securities purchased in accordance with the provisions of Section 1, hereof at any time it may be to the interest of their respective municipalities so to do; provided in no event shall any of such securities be sold for less than par and accrued interest."

Plaintiffs urge that the resolution itself, and the testimony of the county commissioners and county treasurer, conclusively establish that the sale was not made by the county commissioners, but that they simply attempted to delegate to Strange the authority to sell the bonds, which authority, under the terms of the statute, was vested in them and them alone. Plaintiffs say that the statute is mandatory, and that the power of sale therein granted could be exercised only by the board. They call attention to the fact that from the evidence it does not appear that Honnold or anyone representing him ever appeared before the board of county commissioners, or submitted to it any proposal to purchase the bonds, or bid for the bonds, which would be binding up-

on Honnold, and upon which an enforceable sale or contract could be made by the board, but that all negotiations with reference to the purchase of the bonds by Honnold were conducted entirely with defendant Strange, and that from the testimony of both Honnold and his representative no definite offer of purchase at a specific price had been made by him or his representative to Strange, the only agreement being to pay par and accrued interest, although Strange knew that a number of the bond issues held by him were worth, and could be sold for, a price substantially exceeding par and accrued interest. They also point out that by selling all the bond issues together in one transaction Honnold was enabled to purchase a portion of the bonds for less than par and accrued interest, directly contrary to the mandatory provisions of the statute. We are inclined to agree with this contention.

In Bockoven v. Board of Commissioners, 131 Okla. 114, 267 P. 1053, 1056, we said that sinking funds were impressed with a trust of the highest character.

In Board of Commissioners of Tulsa County v. News-Dispatch Printing & Audit Co., 104 Okla. 260, 231 P. 250, we held the action of the board of commissioners, in delegating to the county clerk the power to purchase supplies as agent of the board, invalid. The first two paragraphs of the syllabus in that case state the law as follows:

"The statute has designated the board of county commissioners as the agent to purchase the necessary supplies for the use of other county officers in the performance of their official duties.

"The statute does not grant to the board of county commissioners the power to delegate this duty to some other person."

In Honnold v. Board of Commissioners, 71 Okla. 71, 177 P. 71, we quoted with approval from Board of Commissioners of Shawnee County v. Carter, 2 Kan. 115, as follows:

" 'Where statutes confer special ministerial authority, the exercise of which may affect the rights of property, or incur a municipal liability, it shall be strictly observed, and a material departure will vitiate the proceedings.' "

In that case we held that statutes imposing duties upon county officials in connection with the business of the county were mandatory and must be strictly construed.

In National Surety Co. v. State, 111 Okla. 180, 239 P. 257, involving an attempt by the county treasurer to exchange bonds in which the sinking fund was invested for other bonds, we construed section 2 of the 1919 law, above quoted. In that case we said:

"Section 2 of the amendatory act (section 8573, Comp. Stats. 1921), removes every doubt as to what the Legislature intended. In the adoption of that section it is certain that the lawmaking power well understood that a necessity might arise for converting the securities, bought by the treasurer out of the sinking funds, into cash. In said section the Legislature authorized certain officers to sell such securities when they deemed it to the best interest to do so. The treasurer of the county is not included among those to whom such power is granted, and it becomes certain that the Legislature never intended that the treasurer should be clothed with any such power."

While heretofore the court in construing this statute has not passed upon the exact situation here presented, it appears that in each case involving the construction of that statute it has consistently adhered to the rule that the Act is to be strictly construed, and held that the powers therein granted could be exercised only by the board of commissioners. Cases so holding are cited in Fourth Nat. Bank of Tulsa v. Board of Commissioners, 186 Okla. 102, 95 P. 2d 878. In that case this court held that an exchange of securities by the county treasurer was invalid.

". . . because the county treasurer does not have authority to sell, barter

or exchange the securities in which the sinking fund monies have been invested. The power to sell is vested in the board of commissioners by section 5918, supra (sec. 2, ch. 207, S. L. 1919, above set forth). National Surety Co. v. State for the Benefit of Board of Com'rs of Comanche County, 111 Okla. 180, 239 P. 257; National Surety Co. v. State ex rel. Richards, 111 Okla. 185, 239 P. 262; State for Use of Board of Com'rs v. McCurdy, 115 Okla. 111, 241 P. 816; Sanders v. Board of County Commissioners, 160 Okla. 52, 15 P. 2d 818."

From the principles announced in these decisions it is clear that the authority to sell sinking fund securities was by the Act vested in, and could be exercised by, the county commissioners, and by them alone. They could not delegate this power, nor could they authorize the county treasurer, acting for them, to sell and dispose of bonds in their place and stead, nor could they ratify his act in so doing.

When the facts and circumstances surrounding the transaction here involved are considered in the light of the principles enunciated in the above cases, we think they clearly fail to establish a sale of the bonds by the county commissioners, but do show a consent by the board to a sale to be made by the county treasurer to a prospective purchaser, whose name apparently was not disclosed to the board, for at least the par value and accrued interest of the bonds. The purposed purchaser did not appear before the board, had no dealings or negotiations whatever with the board, and entered into no contract, enforceable or otherwise, with the board. The sale was just as much a sale by a designated agent as a sale of real estate by a real estate agent where such real estate has been listed with him by the owner. Unquestionably, if a real estate agent should advise the owner of property that he could sell the same for a stated minimum price, and the owner of the property authorized him to effect the sale and he did so, no one would contend that the sale was not made by the real estate agent, or that he was not en-

titled to a commission thereon. In the instant case, although the county treasurer was a county officer and the custodian of the bonds subject to the orders of the county commissioners, the latter had no more to do with the actual sale of the property than the owner of the real estate in the hypothetical case above stated.

It appears that the county commissioners relied absolutely upon the treasurer to effect the best sale of the bonds which could be effected, and relied upon the information given by him, and apparently agreed to by an assistant county attorney, that a portion of the bonds, namely the Mounds and Euchee Township bonds, were of doubtful value. They made no independent investigation of the value of any of the bonds, or of the possibility of obtaining a better price therefor. Apparently they were not advised by the treasurer that other bond buyers might be interested in purchasing the bonds, and made no inquiry of him as to the possibility of interesting other bond buyers in the purchase. Neither were they advised, so far as the record shows, of the real value of the various bond issues which the treasurer proposed to lump together in order to effect the sale.

While the law does not specifically set forth any particular procedure to be followed by county commissioners in effecting a sale of such bonds, it was contemplated by the Legislature in enacting the law, and is a reasonable implication from the law as enacted, that the county commissioners in disposing of such bonds, which constituted a trust fund of the highest order, would at least use ordinary diligence and adhere to ordinary business principles in effecting such a sale. The record indicates that they wholly failed to do so, but left the matter entirely to the judgment of the county treasurer, except that they required that the resolution providing for the sale of the bonds be approved by the county attorney.

Since the action of the county commissioners did not authorize the county

treasurer to dispose of the bonds, we hold that the commissioners were not guilty of conversion, and that the judgment of the trial court absolving them and their sureties was not erroneous.

However, we hold that the act of the treasurer in delivering the bonds to Honnold was without authority of law, and that such unauthorized act on his part amounted to a conversion of the bonds. Honnold, the purchaser, was equally guilty since he was presumed to know the law, and was therefore charged with notice that the sale by the county treasurer was invalid.

Plaintiffs assert, and we think correctly, that their measure of damages is that prescribed by subdivision 1 of 23 O. S. 1941 §64. That statute reads as follows:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"1. The value of the property at the time of the conversion with the interest from that time;"

But they assert that defendants are not entitled to the allowance of a credit for the sum of $296,269.12, received by the county in the transaction, because the bonds cannot be returned to Creek county, and because the bonds were delivered to Honnold pursuant to a corrupt and fraudulent agreement in violation of the positive terms of the statute.

However, the evidence is undisputed that the money received by Strange from Honnold as the purchase price of the bonds was delivered by Strange to Creek county, received by it and deposited by the treasurer as provided by law. In Aylesbury Mercantile Co. v. Fitch, 22 Okla. 475, 99 P. 1089, 23 L.R.A. (N.S.) 573, we held that where property wrongfully converted was returned to the owner and accepted by him prior to the bringing of the action for conversion, that fact was to be considered in mitigation of any damages

recoverable. And in Continental Gin Co. v. De Bord, 34 Okla. 66, 123 P. 159, we held that where the converted property had been sold and mortgages or liens against it had been liquidated with the purchase price, the measure of damages would be the difference between the market value of the property at the time of the conversion and the debts or liens then existing which had been satisfied out of the purchase price. Thus it appears that in each case the party guilty of conversion was given the benefit of the return of the property in one case, and the liquidation of the liens against the property in the other. In other words, the measure of damages arrived at in each case was the net loss to the owner after giving credit for the money or property returned to him or expended in his behalf. We think the same rule applies here, and that defendants are entitled to receive credit on the value of the bonds for the amount so paid into the treasury of Creek county.

Plaintiffs also contend that even if credit is given for the sum received by the county from Honnold, they were entitled to recover the additional sum of $83,330, being the face value of interest coupons maturing between the date the property was converted, March 9, 1937, and the date judgment was rendered, January 8, 1943, and to an additional sum, which they say represents the value of the right to collect installments falling due between January 8, 1943, and August 1, 1948. We are unable to agree with this contention. The unmatured interest which the bonds bore, and the length of life of the bonds, entered into and were a part of the value which would be considered by a prospective bond dealer or purchaser in buying bonds, and were undoubtedly taken into consideration by the witnesses who testified as to the value of the bonds. The value as of the date of conversion, under our statute above quoted, would, we think, be the amount which a bond dealer in the open market, considering each bond issue separately, would have paid for

the bonds in their then condition. This is the plain purport of the statute.

The trial court having held that there was no conversion of the bonds, made no finding upon their value on the date of the sale by the county treasurer. It is conceded by all parties that the case was a law case in which both parties waived trial by jury, and ordinarily, in view of the fact that we are reversing the judgment of the trial court on the issue of conversion, the only issue determined by it, we would reverse with directions to grant a new trial, at least on the issue of value, and the damages, if any, sustained by the county by the conversion.

However, in the instant case, the evidence offered by plaintiffs as to the value of the bonds on March 9, 1937, was undisputed. Examination of the record discloses that the only competent evidence as to the value of the bonds on that date was given by the witness Edwards, a bond buyer of long experience. He testified that the value of the bonds on said date was in excess of the amount paid for them by Honnold in the sum of $13,860. No evidence to the contrary was offered by defendants. The valuation placed upon the bonds as of March 9, 1937, by Edwards is in no wise unreasonable or improbable, and is in fact corroborated by the amounts which Honnold received for the various bond issues upon his disposal thereof within a short period after he purchased them.

We have many times held that where the evidence offered by a plaintiff to sustain his case is undisputed, and is not unreasonable or improbable, or contrary to facts and circumstances shown in the record, it is the duty of the trial court to direct a verdict in his favor. Webb v. Aetna Casualty & Surety Co., 194 Okla. 30, 147 P. 2d 169; Amorita Milling Co. v. Miller, 99 Okla. 90, 225 P. 918; Sampson v. Beeler & Bennett, 103 Okla. 229, 229 P. 777. For additional cases so holding, see Oklahoma Digest, vol. 14, Trial, Key No. 141.

Under the rule announced in these cases, had the trial court correctly decided the issue of conversion, it would have been its duty to render judgment for plaintiffs for the sum of $13,860. Since we hold that the evidence conclusively established conversion, we deem it unnecessary to require the trial court to retry the question of damages, but may, under the circumstances, direct it to render the judgment, which, under the undisputed evidence, it should have rendered in favor of plaintiffs. Our action in this respect is supported by Bass Furniture & Carpet Co. v. Finley, 129 Okla. 40, 263 P. 130, in which we held that where it was apparent that a motion for an instructed verdict should have been sustained, we would reverse the cause and render judgment.

The judgment is reversed, with directions to the trial court to render judgment against the defendant C. Edgar Honnold, and against Willis C. Strange and his sureties, Standard Surety & Casualty Company, of New York, and Western Casualty & Surety Company, for the sum of $13,860, with interest thereon at the rate of 6 per cent per annum from March 9, 1937, and for the costs of this action.

ARNOLD, V. C. J., and HALLEY, JOHNSON, and O'NEAL, JJ., concur. DAVISON, C. J., and WELCH and CORN, JJ., dissent.