**A. B. ANDERSON, Plaintiff In Error,**

**v.**

**GRAND RIVER DAM AUTHORITY, a legal entity or artificial person created by statute, Defendant In Error.**

**No. 41829.**

Supreme Court of Oklahoma.

Oct. 8, 1968.

Rehearing Denied Nov. 26, 1968.

Spillers & Spillers, Tulsa, for plaintiff in error.

Q. D. Boydstun, General Counsel, and James R. Tourtellotte, Assistant General Counsel, Vinita, for defendant in error.

L. Keith Smith, Gene A. Davis, Jay, for Grand Lake Ass'n, amicus curiae.

HODGES, Justice.

This appeal presents the question of whether GRDA (Grand River Dam Authority), defendant in the trial court, may legally promulgate and enforce a regulation requiring an applicant for a permit to anchor a houseboat in the Lake O' the Cherokees (commonly called Grand Lake) to obtain the written consent of the "abutting landowner" before the permit will be granted.

Plaintiff in the trial court, A. B. Anderson, had for 20 years anchored his house-boat at a point in Grand Lake approximately 100 to 150 feet offshore under permits from GRDA. The "abutting landowner" in this case is Rojac Development Company, which claims the lands on the shore opposite Anderson's anchorage, and also owns about three miles of adjacent shore line.

In 1964, GRDA amended and re-adopted its "Rules and Regulations Governing the Use of Shorelands and Waters of Grand River Dam Authority". Article XI(1) of these Rules provides in substance that no permit for the location of a houseboat will be issued to any person who does not own "the shore land abutting the Authority's owned land adjacent to the location of such facilities" unless the applicant first obtains the "written consent of such abutting landowner". Anderson was unable to obtain the written consent of Rojac Development Company (apparently a recent purchaser) without agreeing to pay it $150.00 per month for his continued use of the houseboat anchorage location. After his refusal, Rojac complained to GRDA which, acting under Article XI(1) and other applicable sections of its Rules, took possession of and moved the houseboat and later sold it for charges accrued against it.

The above is a summary of the pertinent facts alleged in the amended petition which Anderson, as plaintiff, filed against GRDA and other defendants in the trial court. He alleged that the rules under which GRDA acted were void, and also that the sale was void because of the inclusion of improper charges in the notice of sale. He asked for an order requiring GRDA to return the houseboat to its former location, and for damages he allegedly suffered.

The trial court sustained GRDA's demurrer to the amended petition upon the ground that no cause of action was stated and, when plaintiff refused to amend, entered judgment dismissing the action as to GRDA. From this latter judgment, plaintiff Anderson has perfected this appeal upon the original record. The trial court also sustained separate motions to dismiss to all other defendants, but this action of the trial court has become final and is not an issue on appeal.

In the briefs in this court, issue is joined upon the questions of (1) the validity of the GRDA regulation and (2) the validity of the sale.

On the first question, it is the position of plaintiff Anderson that the GRDA regulation requiring the written consent of the abutting landowner is void because, among other things, it amounts to an illegal delegation of authority by GRDA, and that his amended petition therefore states a cause of action and the demurrer should have been overruled. We agree.

GRDA, a conservation and reclamation district, was created and is governed by statutes now codified as 82 O.S.1961, Sections 861 through 881 as amended.

Section 875 provides in part as follows:

"The District shall not prevent free public use of its lands and lakes for recreation purposes and for hunting and fishing, except at such points where, in the opinion of the Directors, such use would be dangerous or would interfere with the proper conduct of its business, but may in the interest of public health and safety make reasonable regulations governing such use.

" * * * no charges shall ever be made for a permit to operate or use or for the inspection of boats and equipment, docks, anchorages, and landings in private use. The public shall have free use of and access to the waters of the lakes for private use, and shall have the right of anchorage, dock and landing privileges free of charge when used for private boating. * * * "

Under this section, GRDA is plainly authorized to "prevent free public use" of its facilities for recreation purposes at points where such use would be dangerous or would interfere with the proper conduct of the GRDA business; and it is authorized to promulgate reasonable rules to that end "in the interest of public health and safety".

However, plaintiff's amended petition included an allegation that the location and use of plaintiff's houseboat "in no wise interferes with the health and safety of the public or with the proper conduct of the business of the Grand River Dam Authority". It is elementary that this allegation is taken as true for purposes of the demurrer, and the rule under which GRDA acted in this case therefore cannot be justified under the exception contained in the first paragraph of § 875.

Under 82 O.S.1961, § 862(p), GRDA is delegated authority to make and enforce rules " * * * prescribing the type, style, *location* and equipment of all wharves, docks and anchorages." (Emphasis supplied.)

Assuming that this proviso be construed as giving GRDA an *unconditional* discretion in prescribing the "location" of the houseboat anchorage, such discretion must be exercised by GRDA, and not redelegated by it to the abutting landowner. A rule requiring an "abutting landowner" to give its written consent before the anchorage location could be maintained under the circumstances here presented would

be a substitution of the abutting landowner's judgment for GRDA.

In 2 Am.Jur.2d Administrative Law, § 222, it is said:

"It is a general principle of law, expressed in the maxim 'delegatus non potest delegare', that a delegated power may not be further delegated by the person to whom such power is delegated and that in all cases of delegated authority, where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another * * *. A commission, charged by law with power to promulgate rules, cannot, in turn, delegate that power to another."

In 73 C.J.S. Public Administrative Bodies and Procedure § 57, it is said:

"Administrative officers and bodies cannot alienate, surrender, or abridge their powers and duties, or delegate authority and functions which under the law may be exercised only by them; and, although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment."

Although no Oklahoma case precisely in point on the facts has come to our attention, see State, for Use of Board of Com'rs of Creek County ex rel. Jennings v. Strange et al., 202 Okl. 11, 209 P.2d 691, in which analogous principles of law were involved. In that case, this court considered Okla. Statute 1931, § 5918, which authorized the sale by the County Commissioners, under specified circumstances, of certain securities in which sinking funds of the county had been invested. The County Commissioners of Creek County, in a resolution which did not name the purchaser or set the purchase price, had in effect authorized the County Treasurer to make the sale. In an appeal in a subsequent action to recover for conversion of the sinking fund bonds, this court referred to § 5918, and held that "said section did not grant to the board of county commissioners power or authority to delegate this duty to any other person".

In defense of the trial court's judgment, and of the validity of the rule requiring the written consent of the abutting landowner, defendant GRDA cites other language from two sections of the statute governing GRDA.

The first is the last paragraph of 82 O.S.1961, § 862(q), which provides in part that " * * * in the course of exercising its powers as herein enumerated, the said District shall at all times consider the *rights and needs of the people living within and upon the land lying within the watershed* of the rivers or streams developed by the District; * * *." (Emphasis supplied.) Defendant argues that this language "makes it crystal clear that the Legislature intended that special considerations should be given to abutting landowners". We are unable to agree. The quoted language from the last paragraph of § 862(q) does not, either directly or by implication, ascribe to abutting landowners, any rights (in property or otherwise) not enjoyed by others living on the watershed. The GRDA rule under consideration in effect gives to abutting landowners an unconditional, preliminary "veto" power over the right of others to use anchorages 100 to 150 feet off shore.

Defendant also cites the following language of 82 O.S.1961, § 874, in support of the rule:

" * * * No lease shall deprive the owner of any land adjacent to the shorelands or lake front, or abutting thereon, of ingress or egress to and from the water of the lakes and shall not deprive said owner of any wharf, dock or boat anchorage privileges that would belong to said owner if said shorelands or lake front were not leased * * *".

Defendant states in its brief, "It is defendant's contention that if the defendant cannot make a lease which would interfere with these rights, neither can it issue a permit which would interfere with these rights". As is evident, this argument assumes two things to be true: (1) that the granting of plaintiff's permit *would* interfere with "these rights"; and (2) that the anchorage location plaintiff seeks would belong to the abutting landowner if the permit were not granted.

 Under the allegations of plaintiff's amended petition, which are taken as true for purposes of the demurrer, "the proposed site of a house boat anchorage did not unreasonably, *if at all,* interfere with the abutting landowners' use of or access to the lake". Also, we cannot say as a matter of law that the houseboat anchorage location plaintiff seeks, 100 to 150 feet off shore, would belong to Rojac Development Company if the permit were not granted. In this connection, we may observe that we do not agree with defendant's statement in its brief that "this case deals specifically with the location of a *dock* and anchorage." (Emphasis supplied.) Nowhere in the amended petition is there any language indicating that plaintiff seeks docking or landing privileges upon land owned by Rojac Development Company, or upon shore lands adjacent thereto. The term "anchorage" is not defined in any Oklahoma statute that has come to our attention. The exhaustive work, Words and Phrases, Permanent Edition, which purports to include "All Constructions and Definitions of Words and Phrases by the State and Federal Courts", does not include a treatment of the term. In its ordinary meaning, "anchorage" does not include docking or landing privileges. See Webster's New International Dictionary, Second Edition, Unabridged.

Defendant also cites a California case, In re Petersen, 51 Cal.2d 177, 331 P.2d 24, 77 A.L.R.2d 1291, in support of the rule. In that case the court considered a San Francisco ordinance giving the chief of police power to designate taxi cab stands on the public streets for the exclusive use of a particular cab company, but requiring the prior consent of the tenant or owner of the real estate abutting on the location. The ordinance was attacked upon the ground, among others, that the requirement of the consent of the landowner made it unconstitutional. In denying this argument, the court said that, "Such a requirement is proper where the proposed activity is otherwise prohibited and the prohibition is a reasonable exercise of the police power". No question was raised in that case as to the power of the City of San Francisco, if it so desired, to entirely prohibit the use of particular parking areas on public streets as cab stands. In the case now before us, however, the "proposed activity", the use of an anchorage location, is not "otherwise prohibited". On the contrary, our Legislature, in 82 O.S.1961, § 875, has affirmatively directed GRDA not to "prevent free public use" of anchorage locations except under circumstances not applicable here.

 We hold that, under the facts as alleged in the amended petition, and as admitted to be true for purposes of the demurrer, the GRDA regulation requiring the written consent of the abutting landowner is void as an illegal "re-delegation" of delegated authority by GRDA. We also find no merit in GRDA's contention that plaintiff's appeal should be dismissed for a lack of pursuit of administrative remedies and failure to pursue a remedy through the office of the Attorney General.

In view of this conclusion, it is unnecessary to consider the question of the validity of the sale of the houseboat.

The judgment is reversed and the cause is remanded to the trial court.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, and McINERNEY, JJ., concur.

LAVENDER, J., concur in results.