Dear Representative Toure
¶ 0 This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Can the Oklahoma Health Care Authority (OHCA), as the Stateagency charged with the responsibility of administering theState's Medicaid program, delegate its decision-making authorityto a private, non-governmental entity if a right to a hearingbefore OHCA exists?
 2. Do health care providers have a right to an appeal to OHCAif they have been adversely affected by decisions of a privatenon-governmental entity which has entered into a contract withOHCA to review the providers' services?
 3. Does the rule, OAC 317:2-1-2.3(3) (1999), which sets forththe procedure to recoup overpayments made to certain health careproviders, violate constitutional provisions which prohibit thetaking of property without due process?
 I. Introduction
¶ 1 The Oklahoma Health Care Authority (OHCA) is the State agency designated by the Legislature to administer Oklahoma's Medicaid Program. See 63 O.S. Supp. 2000, § 5009[63-5009](B); 56 O.S.Supp. 2000, § 1010.3[56-1010.3] (1). As part of its responsibility OHCA is charged with developing a plan of accounts and controls to ensure that services and information it provides are of sufficient quality and are not used unnecessarily or unreasonably. This is accomplished by the establishment of a peer review system. See56 O.S. Supp. 2000, § 1010.4[56-1010.4] (B)(5). The peer review organization used by OHCA must be a separate entity which has been approved by the federal Secretary or Deputy Secretary of Health and Human Services. See 42 U.S.C. § 1320 (1991). In Oklahoma, that peer review entity is the Oklahoma Foundation for Medical Quality (OFMQ), a not-for-profit, non-governmental entity which has contracted with OHCA. See Letter from Opio Toure, Representative, State of Oklahoma, to W.A. Drew Edmondson, Attorney General, State of Oklahoma (July 18, 2000) (on file with Attorney General's office).
¶ 2 Your inquiries deal with a program administered by OHCA in which it contracts with outside health care providers[1] to provide behavioral/psychiatric services. Pursuant to various provisions of a contract between OHCA and OFMQ, OFMQ reviews these services. This OFMQ procedure involves reviews of the providers both before and after services are provided.
¶ 3 You have inquired about the recoupment process — the process used to recoup overpayment for services which have already been provided. That is the second[2] of two separate processes involved when dealing with these specific providers. Under this process — also called a retrospective review — if OFMQ conducts a review and determines that the provider has been overpaid, those findings will be accepted by OHCA as final, with no appeal to OHCA.
 II. Delegation of Authority
¶ 4 Your first question in effect asks whether a State agency such as OHCA can delegate away its administrative duties to a private contractor. The answer depends on the type of administrative procedure being conducted.
¶ 5 We begin with the constitutional limitation on the exercise of judicial power:
 The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings.
¶ 6 Okla. Const. art. VII, § 1. A cursory reading of this shows a constitutional intent that judicial power be vested only in certain enumerated governmental entities, along with any other such entities the Legislature may deem necessary. See also Cityof Sapulpa v. Land, 223 P. 640, 643-44 (Okla. 1924) (quotingParks v. West, 111 S.W. 726, 727 (Tex. 1908)) ("Where a power is expressly given by the Constitution and the means by which or the manner in which it is to be exercised is prescribed, such means or manner is exclusive of all others."); id. at 645 ("The Constitution of this state confides the judicial power to no court except those organized under the sanction and regulation of state law."). This constitutional intent is reflected inAnderson v. Grand River Dam Auth., 446 P.2d 814 (Okla. 1968), where the Supreme Court made the following observation:
 Administrative officers and bodies cannot alienate, surrender, or abridge their powers and duties, or delegate authority and functions which under the law may be exercised only by them; and, although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment.
 ¶ 7 Id. at 818 (citation omitted). See also Perot v. Fed.Election Comm'n, 97 F.3d 553, 559 (D.C. Cir. 1996) (citingA.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495,537 (1935) ("We agree with the general proposition that when Congress has specifically vested an agency with the authority to administer a statute, it may not shift that responsibility to a private actor. . . ."). There is no indication in the statutes dealing with OHCA that the Legislature intended to confer decision-making ability of that agency to a private concern.
¶ 8 Therefore, the answer to your question is no: OHCA, as the state agency charged with the responsibility of administering the State's medicaid program, cannot delegate its decision-making authority to a private, non-governmental entity. However, it can delegate away its ministerial administrative functions. SeeAnderson, 446 P.2d at 818.[3]
 III. Providers' Right to Hearing Before OHCA
¶ 9 Your second question asks if providers who are adversely affected by a finding of a private non-governmental agency have a right to an administrative hearing from that adverse finding to OHCA. Your question brings into focus the rights involved; and if such rights exist, whether those rights include a hearing before the governmental agency.
¶ 10 Property interests flow not from the Constitution itself, but from "existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth,408 U.S. 564, 577 (1972). Looking to that law, "we focus initially on the relevant statute, regulation, or contract establishing eligibility for the government benefit at issue."Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 581 (2d Cir. 1989) (citing Roth, 408 U.S. at 577-78; Goldberg v.Kelly, 397 U.S. 254, 261-62 (1970)). If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of that benefit, this "suggests that the recipients of such benefits have no entitlement to them." Perales, 878 F.2d at 581 (citing Bishopv. Wood, 426 U.S. 341, 345-47 (1976) (holding that, insofar as city ordinance meant that policemen were employed at the will and pleasure of the city, they had no property interest)). See alsoKelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991), (citation omitted) ("If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit.")
¶ 11 Although federal law mandates that states must provide a fair hearing for a client, i.e., an individual whose request for medical assistance is denied (see 42 U.S.C. § 1396a(a)(3) (1999)), there is no such provision mandating a hearing for a provider of this type which wishes to contest intentions of a state agency to recoup overpayments made to the provider. Likewise, there is nothing in the Oklahoma Medicaid Healthcare Options Act, 56 O.S. Supp. 2000, §§ 1010.1[56-1010.1] through 1010.13,
which mandates that a provider which has overcharged is entitled to a hearing before the agency (although the Act does provide for withholding or forfeiture of payments to a health care provider who fails to comply with provisions in the law. See 56 O.S.Supp. 2000, § 1010.4[56-1010.4] (G)(2)).
¶ 12 Therefore, in the absence of a statute — either state or federal — establishing a right to a hearing for the provider wishing to contest a decision that the provider was paid too much, and as a result the overpaid money should be recouped, the provider would ordinarily have no right to a hearing. However, OHCA has promulgated OAC 317:2-1-2.3(3) — which has the force and effect of law. See 75 O.S. Supp. 2000, § 308.2[75-308.2] (C). That rule reads:
 This subparagraph explains the administrative processes available to providers who have reviews completed by the Oklahoma Foundation for Medical Quality (OFMQ). The OFMQ conducts an administrative process for those providers it reviews. The process afforded providers by OFMQ is the only administrative remedy available to providers. The decision issued by the OFMQ is considered by the OHCA to be a final administrative determination. The final OFMQ determination is not appealable to the OHCA for any further administrative hearings. After OFMQ's decision, OHCA will recoup the monies paid the provider related to the review.
¶ 13 OAC 317:2-1-2.3(3). A health care provider covered by this rule has such rights as are set out within that rule. The rule specifically states that, although there is a procedure within the framework of OFMQ, there is created no appeal to OHCA from OFMQ's hearing process. A review of this rule shows that, in essence, OFMQ merely conducts an audit, the results of which establish that a particular health care provider has been overpaid. The administrative action taken as a result of this audit is conducted by OHCA, when it recoups the money the health care provider should not have received. Rather than creating any rights for the provider, this rule merely reiterates that the provider has no right to an adjudicative hearing before OHCA. Therefore, a health care provider in the form of a hospital which provides behavioral services, covered by OAC 317:2-1-2.3(3), has no right to a hearing before OHCA.
 IV. Due Process Considerations
¶ 14 Your next question asks whether OAC 317:2-1-2.3(3) violates provisions of U.S. Const. amend. XIV, § 1 or Okla. Const. art. II, § 7, which prohibit the taking of property without due process.
¶ 15 As we noted above, it is well established that a valid property interest is an essential prerequisite to the successful assertion of due process rights, and that these property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. See Roth, 408 U.S. at 577; see alsoBishop, 426 U.S. at 344. Put another way, a protectable property interest must be an interest secured by statute or legal rule or through a mutually explicit understanding. See Leis v. Flynt,439 U.S. 438, 441-42 (1979); Perry v. Sindermann,408 U.S. 593, 601 (1972); Chavez v. City of Santa Fe Housing Auth.,606 F.2d 282, 284 (10th Cir. 1979); Coleman v. Darden,595 F.2d 533, 537-38 (10th Cir. 1979). Your question centers around whether OAC 317:2-1-2.3(3) satisfies constitutional concerns.
¶ 16 Due process has two indispensable components: notice and an opportunity to be heard. See Mullane v. Cent. Hanover Bank Trust Co., 339 U.S. 306, 314 (1950). There is no allegation the provider does not receive notice that certain monies paid to the provider will be recouped if an overpayment is made. Likewise, it appears the review conducted by OFMQ provides an opportunity for input from the provider, thus affording an opportunity to be heard.
¶ 17 The United States Supreme Court has determined that due process is "flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer,408 U.S. 471, 481, (1972). There are three factors to consider in determining the scope of due process protections:
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (citation omitted).
¶ 18 Concerning the interest to be affected, the provider in question would already have been compensated for services. The purpose of the review under OAC 317:2-1-2.3(3) is to see if a provider who has already been paid was overcompensated, and whether some kind of recoupment is necessary. Thus, the private interest at stake is minimal, and because the provider is only an "incidental beneficiary of the Medicaid program," Oberlander v.Perales, 740 F.2d 116, 121 (2d Cir. 1984) (citation omitted), there is little interest which is affected.
¶ 19 Second, there is at best only a slight risk of an erroneous deprivation of such interest through the procedures used. The rule provides that OFMQ must examine the performance of the health care provider to see if services which were supposed to be performed were in fact performed. Given that there exists some minimum level of review, there would be little, if any, probable value in requiring an additional administrative review by personnel within OHCA, whose personnel would not necessarily have the same level of expertise.
¶ 20 The third factor is the Government's interest and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Here, one must be reminded that OAC 317:2-1-2.3(3) applies to reviews conducted on hospitals after prior authorization was given. During the prior authorization process, there is an appeal to OHCA from a decision denying approval for both inpatient and outpatient psychiatric services. See OAC 317:30-5-41(1)(D) (1999); OAC 317:30-5-46(4) (1999) (inpatient); OAC 317:30-5-241(b)(3) (1999) (outpatient). Given that the "gatekeeping" function initially allowing the treatment was capable of being reviewed by OHCA, there is little, if any, need for an additional requirement of an administrative appeal to OHCA after a review determined whether services were carried out correctly.
¶ 21 Based on the factors enumerated above, providers receive the process which is due to them. Therefore, OAC 317:2-1-2.3(3) does not violate constitutional provisions which prohibit the taking of property without due process.
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Health Care Authority, as the State agencycharged with the responsibility of administrating the State'sMedicaid program, cannot delegate its adjudicative authority to aprivate, non-governmental entity. However, it can delegateadministrative responsibilities which are purely ministerial.Whether particular administrative duties are ministerial oradjudicative is a question of fact beyond the scope of anAttorney General Opinion. See 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).
 2. Health care providers who have been adversely affected bythe decisions of a private non-governmental entity which hasentered into an agreement with the Oklahoma Health Care Authority(OHCA) to review the providers' services have no right to anappeal from that review process before OHCA, absent a statute orrule creating such a right.
 3. OAC 317:2-1-2.3(3), which describes the process availableto certain providers who have reviews completed by a privateentity who has contracted with OHCA to perform such reviews, doesnot violate U.S. Const. amend. XIV, § 1 or Okla. Const. art. II,§ 7, the constitutional provisions which prohibit the taking ofproperty without due process.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAN CONNALLY ASSISTANT ATTORNEY GENERAL
[1] The term "provider" as used here and throughout this Opinion is intended to apply solely to hospitals which provide behavioral/psychiatric services. Such hospitals are the only entities affected by OAC 317:2-1-2.3(3), the rule (set out later in this Opinion) about which you inquire.
[2] The first process is a gatekeeping function at the beginning of the treatment process. Under this gatekeeping (pre-authorization) process, a hospital which provides psychiatric services must get approval from OFMQ before those services can be provided. In this gatekeeping/pre-authorization process, if a decision is made denying the request for services, that decision can be appealed to OHCA. See OAC317:30-5-41(1)(D) (1999) (adults); OAC 317:30-5-46(4) (1999) (children). It should be noted here that the administrative processes conducted by OHCA are not subject to the hearing requirements as set forth in Article II of the Administrative Procedures Act. See 75 O.S. Supp. 2000, § 250.4[75-250.4](B)(19).
[3] The difference between judicial and ministerial functions has been examined before. The United States Supreme Court has explained that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." Dist. of Columbia Courtof Appeals v. Feldman, 460 U.S. 462, 477 (1983) (quotingPrentis v. Atlantic Coast Line, 211 U.S. 210, 226 (1908)).
The United States Supreme Court has not defined ministerial acts, but one federal circuit court of appeals has addressed what constitutes such actions. Such acts are:
 [A]cts taken with respect to particular individuals based on the preferences of the actor; they do not involve application of preferences inscribed in existing law; nor do they involve the creation of a rule that will apply in the future. While the Court has denied that the state supreme court's actions in Feldman were ministerial acts similar to the appointment of a clerk or a bailiff, it did accept the existence of such a category of acts.
Guarino v. Larsen, 11 F.3d 1151, 1157-58 (3rd Cir. 1993) (citation omitted). In light of our holding below that the rule about which you inquire does not create any such rights, we need not address whether OHCA would be delegating away its judicial function or its ministerial function, which in any case would be a question of fact beyond the scope of an Attorney General Opinion. See 74 O.S. Supp. 2000, § 18b[74-18b](A)(5).