Question Submitted by: Lyle Kelsey, Executive Director, Oklahoma Board of Medical Licensure and Supervision
2017 OK AG 11
Decided: 09/06/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 11, __ __

 
¶0 The Oklahoma Office of the Attorney General has received your request for an official Attorney General Opinion in which you have asked in effect the following questions:
1. May the Director of a physician assistant training program, sitting as a member of the Physician Assistant Advisory Committee, evaluate the application of a former student of that Director's program and make a recommendation as to whether the former student should be licensed?
2. May the State Board of Medical Licensure and Supervision, for the purpose of license renewal, require a licensed physician assistant to pay a fee to a private professional association to log and report the licensee's continuing medical education hours?
I.
Background
¶1 The licensure of physician assistants is governed by the Physician Assistant Act, 59 O.S.2011 & Supp.2016, §§ 519.1-524 ("the Act"). The Act grants the State Board of Medical Licensure and Supervision ("the Board") the power and authority to promulgate rules governing the licensure, standards of training, and standards of practice of physician assistants. 59 O.S.Supp.2016, § 519.3(D). Additionally, the Board is authorized to "approve institutions for training" physician assistants. Id. The Board has further authority to investigate complaints, hold hearings, and revoke licenses. Id. § 519.3(E).
¶2 While the Board has the sole authority to issue and revoke licenses, license applications are first reviewed by the Physician Assistant Advisory Committee (the "Committee"), which then makes a recommendation to the Board. Id. § 519.3(F)(2). Composed of three physician assistants, two allopathic medicine physicians, and two osteopathic physicians,[1] the Committee also advises the Board more broadly "on all matters pertaining to the practice of physician assistants." Id. § 519.3(F)(1). When advising the Board on applications for licensure, establishing standards of training, or approving institutions for training, the Committee is enlarged to include "the Director, or designee, of all the Physician Assistant educational programs conducted by institutions of higher education in the state[.]" Id.[2]
II.
Discussion
A. The director of a physician assistant training program may participate as a member of the Physician Assistant Advisory Committee to evaluate the application of a former student of that director's program.
¶3 In your first question, you ask whether a director of a physician assistant training program, when sitting as a member of the Committee to evaluate candidates for licensure pursuant to Title 59, Section 519.3(F)(2), may evaluate the application of a former student of that director's program and make a recommendation as to whether the former student should be licensed. Your question appears to be premised on conflict-of-interest and partiality concerns. However, we find such concerns unfounded for the following reasons.
¶4 First, there is no facial impropriety in a director participating in the evaluation of a former student because the Board's enabling act expressly requires it. For the purpose of "considering applicants for licensure"-many of whom are likely graduates of the State's physician assistant programs-the Committee is expressly expanded to include the directors of those programs, and the statute makes no exception for directors evaluating their programs' former students. 59 O.S.Supp.2016, § 519.3(F)(2). In fact, the directors are a likely source of pertinent information regarding the only subjective criterion for licensure: the applicant's moral character. See 59 O.S.2011, § 519.4(1). If the Legislature had intended to restrict the directors' role to evaluating those candidates who are not their former students, the Legislature could have done so. "[L]egislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." City of Duncan v. Bingham, 1964 OK 165, ¶12, 394 P.2d 456, 460; see also Cox v. State ex rel. Okla. Dept. of Human Services, 2004 OK 17, ¶ 26, 87 P.3d 607, 617 ("This Court does not read exceptions into a statute nor may we impose requirements not mandated by the Legislature."). Because the Legislature did not exclude directors from evaluating their former students, we can only infer that it intended the directors to evaluate the credentials and make a recommendation to the Board as to the licensure of all applicants.
¶5 Second, while State officers and employees must avoid conflicts of interest as proscribed by rules promulgated by the Ethics Commission, see 74 O.S.Supp.2016, Ch. 62, App. I, R. 4.4,
[3] the scenario described does not appear to implicate any of the prohibitions of those rules. And even if it did, the interpretation and application of Ethics Commission rules falls within the purview of the Ethics Commission, not this office. A.G. Opin. 2013-1, at 13 n.2; see also Okla. Const. art 29, § 5.
¶6 Finally, in considering the Committee's inclusion of program directors when evaluating and recommending candidates for licensure, it is important to keep in mind that the Committee has no independent decision-making authority. Rather, it is charged solely with "review[ing] and mak[ing] recommendations to the Board on all applications for licensure as a physician assistant." 59 O.S.Supp.2016, § 519.3(F)(2).[4] The ultimate decision to grant or deny a license application lies exclusively with the Board. See id. §§ 519.2(5), 519.6(A). In theory, were the Board to abdicate its own decision-making responsibilities and essentially allow the Committee to "make decisions beyond [its] authority," partiality concerns may arise. See Johnson v. Bd. of Governors of Registered Dentists, 1996 OK 41, ¶¶ 34, 36, 913 P.2d 1339, 1348 (finding that the Oklahoma Dental Board abdicated its statutory decision-making authority by allowing an individual board member who was an economic competitor of the Respondent to issue the Formal Complaint and set the hearing date). However, we have no reason to believe that is the case here.
¶7 Accordingly, directors of the State's physician assistant training programs, who are acting in their statutory role as Committee members, may participate in reviewing the applications of students from the programs they oversee and make recommendations to the Board regarding the applicants' licensure.
B. Under the Act, the State Board of Medical Licensure and Supervision may not require a licensee to pay a fee to a private professional association for logging and reporting the licensee's continuing medical education hours.
¶8 In addition to the provisions described above, the Act further authorizes the Board to promulgate rules establishing fees for initial licensure of physician assistants, license renewal, late license renewal, application to practice, and disciplinary hearings. 59 O.S.2011, § 519.8(B). The Board has promulgated such fees in its fee schedule. OAC 435:1-1-7. For instance, the initial application fee is $150, the fee for license renewal is $125, and the disciplinary hearing fee is the actual cost of the proceedings as determined by the Board. Id.
¶9 The Act also requires licensed physician assistants to complete twenty hours of continuing medical education ("CME") annually in order to renew a license. Section 519.8(A) provides:
Licenses issued to physician assistants shall be renewed annually on a date determined by the State Board of Medical Licensure and Supervision. Each application for renewal shall document that the physician assistant has earned at least twenty (20) hours of continuing medical education during the preceding calendar year.

59 O.S.2011, § 519.8(A) (emphasis added). The Board has promulgated rules for tracking licensees' CME credits: "The CME hours shall be logged and reported to the Board on an annual basis by the Oklahoma Academy of Physician Assistants, Inc. The applicant shall bear the cost of this requirement." OAC 435:15-3-17(c) (emphasis added).
¶10 Thus, in order to renew a license, a physician assistant must complete twenty hours of CME and report the hours to the Oklahoma Academy of Physician Assistants, Inc. ("OAPA"), a private professional association.[5] OAC 435:15-3-17(c). OAPA then logs and reports the hours to the Board, a service for which the licensee is required to pay OAPA. Id. OAPA's discretion to set its fee appears to be unconstrained by Board oversight, whether in the Act or in Board rules. As of this writing, our understanding is that OAPA members pay annual dues of $125, but are not charged a fee for logging and reporting their CME hours. However, non-members are charged $135 as the cost for logging and reporting CME hours. In either case, the licensee must separately pay to the Board the license renewal fee as promulgated in the Board's fee schedule.
¶11 If the licensee does not use the OAPA's service of logging and reporting CME hours and does not pay the OAPA fee, the Board will not renew the license. You have asked whether this requirement, as provided for in OAC 435:15-3-17(c), violates any principle of Oklahoma law. In order to answer your question, it is necessary to examine the source and nature of an administrative agency's powers and duties.
1. State agencies may only exercise express or implied powers granted by statute.
¶12 State agencies may only exercise powers granted by statute. Boydston v. State, 1954 OK 327, ¶19, 277 P.2d 138, 142. Agencies also have "such powers as are necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." Marley v. Cannon, 1980 OK 147, ¶10, 618 P.2d 401, 405 (citations omitted). "However, an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority." Id. (emphasis added). "An administrative agency may not under the guise of its rule making power exceed the scope of its authority and act contrary to the statute which is the source of its authority." Adams v. Prof. Prac. Comm'n, 1974 OK 88, ¶ 11, 524 P.2d 932, 934.
¶13 The Act grants to the Board the express authority to promulgate rules regarding license renewal of physician assistants including the manner in which CME hours shall be documented. See 59 O.S.Supp.2016, § 519.3(D); 59 O.S.2011 § 519.8(A). Likewise, the Board has exclusive authority to set a license renewal fee. 59 O.S.2011, § 519.8(B). However, we can find no authority in the Act, express or implied, permitting the Board to require licensees to pay an additional fee to a private professional association as a prerequisite to having their license renewed.
¶14 It is important to note that the Board issues licenses in at least fourteen categories of health care practice and implements six different legislative acts.[6] For all of those licenses except physician assistants, the Board logs the licensee's CME hours itself and does not charge anything other than the normal Board renewal fee.[7] It is only physician assistants that must report CME hours to a private professional association and pay a fee to that association in order to renew a license. There is nothing in the Board's various acts or rules to indicate that CME taken by physician assistants requires special reporting by a private entity. In fact, physician assistants are required to complete the same category of CME credit as licensees in other practice areas under the Board's jurisdiction.[8] We see no reason to treat physician assistants differently with regard to logging and reporting their CME credit hours.
¶15 As a result, because the Board does not have specific express or implied authority to set a separate CME logging and reporting fee, the fee required by OAC 435:15-3-17(c) is void.
2. Even if a separate CME logging and reporting fee were within the scope of the Board's exclusive fee-setting authority, the Board has impermissibly delegated that authority to a private entity.
¶16 Oklahoma courts and prior Attorney General Opinions have recognized the legal principle of delegata potestas non potest delegari, which has been interpreted to mean that "one to whom authority stands delegated may not, without specific empowerment, redelegate it to another." See A.G. Opin. 2007-24 at 165 (citing Sullins v. Amer. Med. Response of Okla., Inc., 2001 OK 20, n.13, 23 P.3d 259, 267 n.13 (Opala, J., concurring)). As the Oklahoma Supreme Court stated in Anderson v. Grand River Dam Authority:
It is a general principle of law, expressed in the maxim 'delegatus non potest delegare', that a delegated power may not be further delegated by the person to whom such power is delegated and that in all cases of delegated authority, where personal trust or confidence is reposed in the agent and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal and cannot be delegated to another * * *. A commission, charged by law with power to promulgate rules, cannot, in turn, delegate that power to another.

1968 OK 143, ¶14, 446 P.2d 814, 818 (quoting 2 Am. Jur. 2d Administrative Law § 222 (1968)) (emphasis added).
¶17 However, in applying the principle, Oklahoma courts have distinguished ministerial functions and duties from those that are discretionary or require the exercise of judgment:
Administrative officers and bodies cannot alienate, surrender, or abridge their powers and duties, or delegate authority and functions which under the law may be exercised only by them; and, although they may delegate merely ministerial functions, in the absence of statute or organic act permitting it, they cannot delegate powers and functions which are discretionary or quasi-judicial in character, or which require the exercise of judgment.
Id. at ¶15, 446 P.2d at 818 (quoting 73 C.J.S. Public Administrative Bodies and Procedure § 57) (emphasis added). See also Van Horn Oil Co. v. Okla. Corp. Comm'n, 1988 OK 42, ¶12, 753 P.2d 1359, 1363. As a result, while administrative officers and bodies may delegate ministerial duties, they cannot delegate powers and functions which are discretionary or require the exercise of judgment.
¶18 The case of Anderson v. Grand River Dam Authority, cited above, is particularly instructive on this point and relevant to the question at hand. In Anderson, the Grand River Dam Authority ("GRDA") had unconditional authority to prescribe the "type, style, location and equipment of all wharves, docks and anchorages." 1968 OK 143, ¶¶ 12-13, 446 P.2d at 817. GRDA promulgated a rule requiring an applicant for a permit to anchor a houseboat on Grand Lake to first obtain the consent of the "abutting landowner." Id. at ¶ 3, 446 P.2d at 816. In other words, any person who owned land abutting the location where the applicant wished to anchor a houseboat could effectively veto the granting of the application. The Court held that the GRDA rule substituted the abutting landowner's judgment for that of the GRDA. Id. at ¶ 13, 446 P.2d at 817-18. As a result, the rule was void as an unlawful redelegation of a delegated authority. Id. at ¶ 23, 446 P.2d at 819.
¶19 The Board has been exclusively delegated the duty of setting license fees, including license renewal fees for physician assistants. 59 O.S.2011, § 519.8(A). Setting such fees requires the exercise of judgment by the Board and therefore cannot be redelegated by the Board to another entity. As a result, even if the CME logging and reporting fee created by OAC 435:15-3-17(c) were construed as coming within the scope of the Board's exclusive fee-setting authority, the rule would be void because the Board has impermissibly redelegated to OAPA its authority to determine the appropriate fee.
¶20 It is therefore the Official Opinion of the Attorney General that:
1. The Director of a physician assistant training program, sitting as a member of the Physician Assistant Advisory Committee pursuant to 59 O.S.Supp.2016, § 519.3(F)(2), may evaluate the application of a former student of that Director's program and make a recommendation to the State Board of Medical Licensure and Supervision as to whether the former student should be licensed.
2. The Physician Assistant Act (
59 O.S.2011 & Supp.2016, § 519.1-524) does not authorize the State Board of Medical Licensure and Supervision to charge or require payment of a fee for logging and reporting continuing medical education hours other than the license renewal fee provided for at 59 O.S.2011, § 519.8 (B).
3. The State Board of Medical Licensure and Supervision has exclusive authority to set fees under the Physician Assistant Act (
59 O.S.2011 & Supp.2016, § 519.1-524). Even if the Act could be construed as giving the Board implied authority to charge a separate fee for logging and reporting continuing medical education hours, the setting of such a fee involves the Board's discretion and therefore cannot be delegated to a private entity. Anderson v. Grand River Dam Authority, 1968 OK 143, ¶¶ 14-15, 446 P.2d 814, 818.
 
Mike HunterAttorney
General of Oklahoma
Grant Moak
Assistant Attorney General
FOOTNOTES
[1] Specifically, the composition of the Committee is as follows: "Three members shall be physician assistants appointed by the [Board] from a list of qualified individuals submitted by the Oklahoma Academy of Physician Assistants. One member shall be a physician appointed by the Board from its membership. One member shall be a physician appointed by the Board from a list of qualified individuals submitted by the Oklahoma State Medical Association and who is not a member of the Board. One member shall be a physician appointed by the State Board of Osteopathic Examiners from its membership. One member shall be a physician appointed by the State Board of Osteopathic Examiners from a list of qualified individuals submitted by the Oklahoma Osteopathic Association and who is not a member of said board." 59 O.S.Supp.2016, § 519.3(A) (emphasis added).
[2] Our understanding is that there are three such programs in the State, which are run by (i) the University of Oklahoma Health Sciences Center; (ii) the University of Oklahoma - Tulsa, School of Community Medicine; and (iii) Oklahoma City University. Accordingly, when considering certain actions, the Committee expands from seven to ten members. 59 O.S.Supp.2016, § 519.3(F)(2).
[3] Rule 4.4 states in pertinent part that "a state officer or employee shall not use his or her State office (1) for his or her own private gain, (2) for the endorsement of any product, service or enterprise, (3) for the private gain of a family member or persons with whom the state officer or employee is affiliated in a nongovernmental capacity, including nonprofit organizations of which the state officer or employee is an officer or member, or (4) for the private gain of persons with whom the state officer or employee seeks employment or business relations." 74 O.S.Supp.2016, Ch. 62, App. I, R. 4.4.
[4] Moreover, any single director of a physician assistant training program will be only one of ten Committee members to weigh in on such recommendations.
[5] OAPA's mission is "to secure and strengthen the Physician Assistant profession in Oklahoma through advocacy, promotion and continuing medical education." Its goals include: "1. Financial growth and security for self-sufficiency and organizational development of OAPA. 2. Increase organizational capacity of OAPA. 3. Greater public and professional understanding of the role of Physician Assistants in the health care system. 4. Monitor and pursue legislation through advocacy and education that enables PAs to provide efficient patient care and maintain current status, rights and privileges. [and] 5. Offer quality continuing medical education." Oklahoma Academy of Physician Assistants, Inc., Mission Statement & Strategic Direction, http://www.okpa.org/about/mission-statement-strategic-dirction/ (last visited August 25, 2017).
[6] For the various licenses, see generally OAC 435:1-1-7. The Board implements the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act (59 O.S.2011, § 495), the Physician Assistant Act (59 O.S.Supp.2016, § 519.3), the Oklahoma Athletic Trainers Act (59 O.S.2011, § 528), the Registered Electrologist Act (59 O.S.2011, § 536.4), the Therapeutic Recreation Practice Act (59 O.S.2011, § 540.5), and the Radiologist Assistant Licensure Act (59 O.S.2011, § 541.3).
[7] See OAC 435:10-15-1 (Physicians and Surgeons); 435:15-3-17 (Physician Assistant); 435:20-9-2 (Physical Therapists and Assistants); 435:25:5-2 (Athletic Trainers); 435:30-1-5 (Occupational Therapists and Assistants); 435:35-1-10 (Dieticians); 435:40-1-9 (Registered Electrologists); 435:45-5-1 (Respiratory Care Practitioner); 435:50-5-3 (Pedorthists); 435:55-5-3 (Orthotists, Prosthetists and Registered Technicians and Assistants); 435:60-5-3 (Radiologist Assistants); 435:65-3-3 (Anesthesiologist Assistants); and 435:70-5-4 (Therapeutic Recreation).
[8] Physicians, physician assistants and anesthesiologist assistants must take Category I CME for at least part of their license renewal requirements. See OAC 435:10-15-1, 435:15-3-17, and 435:65-3-3, respectively.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 42, 753 P.2d 1359, 59 OBJ 1163, 
Van Horn Oil Co. v. Oklahoma Corp. Com'n
Discussed

 
2001 OK 20, 23 P.3d 259, 72 OBJ 573, 
SULLIN v. AMERICAN MEDICAL RESPONSE OF OKLAHOMA, INC
Discussed

 
1954 OK 327, 277 P.2d 138, 
BOYDSTON v. STATE
Discussed

 
1964 OK 165, 394 P.2d 456, 
CITY OF DUNCAN v. BINGHAM
Discussed

 
1968 OK 143, 446 P.2d 814, 
ANDERSON v. GRAND RIVER DAM AUTHORITY
Discussed at Length

 
1974 OK 88, 524 P.2d 932, 
ADAMS v. PROFESSIONAL PRACTICES COMMISSION
Discussed

 
2004 OK 17, 87 P.3d 607, 
COX v. STATE ex rel. DEPT. OF HUMAN SERVICES
Discussed

 
1996 OK 41, 913 P.2d 1339, 67 OBJ 1027, 
Johnson v. Bd. Of Gov. of Registered Dentists
Discussed

 
1980 OK 147, 618 P.2d 401, 
Marley v. Cannon
Discussed

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 541.3, 
Powers and Duties of State Board of Medical Licensure and Supervision
Cited

 
59 O.S. 540.5, 
State Board of Medical Licensure and Supervision - Powers and Duties
Cited

 
59 O.S. 495, 
Certificates
Cited

 
59 O.S. 519.1, 
Short Title
Discussed at Length

 
59 O.S. 519.3, 
Physician Assistant Committee
Discussed at Length

 
59 O.S. 519.4, 
Eligibility for Certification as Physician Assistant
Cited

 
59 O.S. 519.8, 
Annual Renewal of Physician Assistant Certificates - Promulgation of Fees
Discussed at Length

 
59 O.S. 528, 
Board - Powers and Duties
Cited

 
59 O.S. 536.4, 
Issuance of Licenses - Board Powers and Duties
Cited